## PAVING DISTRICT No. 36 *v.* LITTLE.

### Opinion delivered May 3, 1926.

1. MUNICIPAL CORPORATIONS—CREATION OF IMPROVEMENT DISTRICTS.—Amendment No. 13 to the Constitution, relating to the initiative and referendum of statutes and municipal ordinances, has no reference to municipal ordinances creating improvement districts in cities and towns, as such ordinances cannot be properly called municipal legislation or measures, since the council in such a case is the mere agent of the property owners to make effective the will of the latter.

2. CONSTITUTIONAL LAW—DUE PROCESS—IMPROVEMENT DISTRICTS.—Ordinances creating improvement districts in cities and towns are not subject to attack as involving a taking of property without due process of law, since landowners have full opportunity to be heard upon the question of the formation of the district and the extent of the burden imposed upon property owned by them.

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; reversed.

*Pryor, Miles & Pryor* and *George W. Dodd,* for appellant.

*Daily & Woods,* for appellees.

SMITH, J. Appellees, who were the plaintiffs below, owned real property within the limits of Paving District No. 36 in the city of Fort Smith, and they brought this suit to cancel the ordinance of that city whereby the district was created.

Two questions are presented by this appeal. The first is whether the amendment voted on at the election in 1920 as Amendment No. 13 applies to municipal ordinances creating improvement districts in cities and towns; and the second, whether the improvement district here in question was void because the cost of the proposed improvement exceeded the betterments assessed therein.

Under the decision of this court in the case of *Hill v. Brickhouse,* 167 Ark. 513, this amendment was declared adopted, and it is conceded that, if this amendment applies to municipal ordinances creating improvement districts, ordinance No. 1397, which created Paving District No. 36, was prematurely passed.

Relevant portions of the constitutional amendment read as follows: "Municipalities may provide for the exercise of the initiative and referendum as to their local legislation. General laws shall be enacted providing for the exercise of the initiative and referendum as to counties. Fifteen per cent. of the legal voters of any municipality or county may order the referendum, or invoke the initiative upon any local measure. In municipalities the number of signatures required upon any petition shall be computed upon the total vote cast for the office of mayor at the last preceding general election; in counties, upon the office of circuit clerk. In municipalities and counties the time for filing an initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election, at which it is to be voted upon; for a referendum petition at not less than thirty days nor more than ninety days after the passage of such measure by a municipal council; nor less than ninety days when filed against a local or special measure passed by the General Assembly.

"Every extension, enlargement, grant, or conveyance of a franchise or any rights, property, easement, lease, or occupation of or in any road, street, alley or any part thereof in real property or interest in real property owned by municipalities, exceeding in value three hundred dollars, whether the same be by statute, ordinance, resolution, or otherwise, shall be subject to referendum and shall not be subject to emergency legislation."

The amendment contained a section reading as follows:

"Definition. The word 'measure' as used herein includes any bill, law, resolution, ordinance, charter,

constitutional amendment or legislative proposal or enactment of any character.''

In our opinion the amendment does not apply to the ordinance in question.

In the case of *Fitzgerald* v. *Walker,* 55 Ark. 148, the court, in considering the nature of the improvement districts which § 27 of article 19 of the Constitution authorizes the property owners in the cities and towns of the State to organize, said: ''The fact that an improvement district is organized to accomplish a purpose which, in a limited sense, may be said to be 'municipal', does not make it a 'municipal corporation.' It exercises no legislative powers, and lacks many other essential characteristics of a corporation created for the government of a city or town. * * * It is said, however, that an improvement district is the agent of the city, and as such can have no greater power than its principal. But such district is not in any sense the agent of the city or town within which it is organized. Its powers are derived directly from the Legislature, and in exercising them the board acts as the agent of the property owners whose interests are affected by the duties it performs. (Citing cases).''

In the case of *Morrilton Waterworks Imp. Dist.* v. *Earl,* 71 Ark. 4, the court discussed the authority of the councils of cities and towns over improvement districts organized under statutes enacted pursuant to § 27 of article 19 of the Constitution. The question there involved was the right of the council to abolish an improvement district. After setting out the sections of the statute under which the owners of property may proceed in organizing an improvement district, the court said: ''If it (the town or city council) refuses to make the assessment (after the statute has been complied with by the property owners), it can be compelled to do so by mandamus, at the instance of the board. It cannot lawfully withhold from the board the means for completing the improvement when the cost does not exceed twenty per

centum of the assessed value of the real property in the district. It may refuse to make an assessment when the cost of the improvement exceeds twenty per centum of the assessed value of the real property. In this way, and in no other, is it authorized by the statute to defeat the improvement." It was there further said: "The statutes do not place the board of improvement under the supervision and control of the city council, to be used as an agent to carry into effect its wishes or commands. *Fitzgerald* v. *Walker*, 55 Ark. 157. But they give the board complete control over the construction of the improvement, and invest it with the power to make all contracts necessary to be made in respect thereto, with the power to borrow money, to institute suits in its name to enforce the payment of the assessments upon the real property in its district, to disburse the money collected to pay the cost of the improvement, and with the power, except as aforesaid, to compel the city council by mandamus to make further assessments upon real property to complete the improvement."

In the case of *Tomlinson Brothers* v. *Hodges*, 110 Ark. 528, the construction of an act passed at the special session of the 1911 General Assembly to carry into effect the provisions of the amendment voted on as Amendment No. 10 was involved. Act No. 2, Acts 1911, page 582. The amendment voted on as No. 10 was the original I. and R. amendment. This court held, in the case cited, that this act of 1911, passed for the purpose of carrying into effect the I. and R. amendment, was intended only to carry out and put into effect the constitutional amendment, and did not confer on the people of a municipal corporation referendum power over an ordinance passed by a city council which granted a franchise to furnish lights to the city. The General Assembly, at its 1913 session, passed another act granting to the people of municipal corporations the right to refer ordinances passed by the council of such municipal corporations and to prescribe the method of referring the same.

Acts 1913, page 563. This act is found as §§ 7503 *et seq.,* C. & M. Digest.

The case of *Hodges* v. *Board of Improvement,* 117 Ark. 266, involved the construction of the act of 1913, in which case it was attempted to refer to the people an ordinance of the city of Texarkana creating a waterworks improvement district. The court there said: "We are of the opinion that act No. 135 of the Acts of 1913, above referred to, was intended to apply only to matters of general legislation by the city council in which all electors without distinction may take part." This opinion was delivered March 1, 1915.

It is significant that Amendment No. 13, the submission of which was authorized at the 1919 session of the General Assembly, made no reference to the act of 1913, but expressly repealed the act of 1911 hereinbefore referred to. The new amendment made the granting of franchises subject to the referendum, as this is a matter of general concern to all the inhabitants of the town or city, but no language was used in the amendment which we think can be construed as subjecting improvement districts to a referendum of the electors generally. Had any such result been intended, we think it would have been indicated by a reference to them *eo nomine,* especially so when the provisions of § 27 of article 19 of the Constitution on the subject are considered, of which we shall later have more to say.

We think the ordinances which the town and city councils are required to pass as the agents of the property owners in any improvement district cannot properly be called municipal legislation, nor do they come within the definition of the word "measure" appearing in the amendment. These councils are the mere agents selected by the General Assembly to make effective the right given property owners by § 27 of article 19 of the Constitution. *Eickhoff* v. *Street Imp. Dist. No. 11 of Argenta,* 120 Ark. 212; *Board of Imp.* v. *Pollard,* 98 Ark. 543; *Meyer* v. *Ring,* 162 Ark. 9.

It is a matter of common knowledge that our I. and R. amendments were both largely patterned after those of the State of Oregon, and, this being true, the decision of the Supreme Court of that State in the case of *Long v. Portland,* 98 Pac. 1111, is entitled to special consideration.

The original I. and R. amendment of that State was amended to read as follows: "The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts."

The amendment quoted was construed by the Supreme Court of Oregon as referring to general municipal legislation, and it was held that it did not include transient orders concerning a particular person, and held that legislation of that character might be enacted without reference to the referendum power.

If appellees' contention that the amendment voted on known as No. 13 applies to ordinances creating improvement districts, were correct, our statute on the subject of creating such districts would have been rendered inoperative. If such ordinances are subject to the referendum provided by the amendment, the ordinance would not be effective for ninety days after the passage, while the statute requires that the petition signed by a majority in value of the property owners shall be filed within three months after the publication of the ordinance creating the district, and, if this petition cannot be validly filed until the period for referendum has expired, then it cannot be filed at all within the time limited by the statute. Section 5652, C. & M. Digest. It would thus be necessary to reconstruct the entire municipal improvement district law, and, while the amendment might accomplish that result, it is not probable that this was intended without including improvement districts *eo nomine* in the amendment, as franchises were included.

In the case of *Hodges* v. *Dawdy,* 104 Ark. 583, it was said that, in construing constitutional amendments, such an interpretation should be made in case of ambiguity that inconvenience and absurdity may be avoided.

In the construction of amendments to the Constitution it was said in the *Hodges* v. *Dawdy, supra,* case that, "the amendment being the last expression of the popular will in shaping the organic law of the State, all provisions of the Constitution which are necessarily repugnant thereto must, of course, yield, and all others remain in force. It is simply fitted into the existing Constitution, the same as any other amendment, displacing only such provisions as are found to be inconsistent with it."

When that rule of construction is applied here, we conclude that the amendment did not intend to change in any way the provisions of § 27 of article 19 of the Constitution, which reads as follows: "Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform."

Under this section the right to construct municipal improvements is given to the property owners upon whose property the burden of the expense will fall. Very frequently these improvements cover only a small portion of the city or town in which it is proposed to construct them. Yet, if these ordinances are subject to Amendment 13, any improvement, however small, would be subject to the approval of the electors, as such, of the entire city or town, whether they were property owners in the district or not.

The statutes enacted pursuant to § 27 of article 19 provide, in effect, for both an initiative and a referendum. Ten property owners must initiate, and a majority must

approve, but, under this section of the original Constitution, the consent of the property owners only is required.

We conclude therefore that the ordinances creating improvement districts are not "measures" as that word is defined in Amendment No. 13.

Appellees insist that, if the ordinances creating improvement districts are not treated as legislative enactments, all the statutes on the subject would fall, as constituting a taking of property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution. We do not agree with counsel in this contention. These ordinances emanate directly from statutes passed by the General Assembly of the State, which give full opportunity to a protesting landowner to be heard both on the question of the formation of the district at all and also upon the question of the extent to which, if any, the burden of the cost of the improvement may be imposed upon property owned by him.

The plans of the proposed improvement approved by the commissioners of the city show an estimated cost of $8,000, while the betterments assessed totaled only $7,999.68. It appears therefore that the estimated cost exceeds by 32 cents the betterments to result from the improvement. The protesting landowners insist that this excess renders the district void.

In answer to this contention it may be said that if the maxim, *de minimis non curat lex,* does not apply (*Ganaway* v. *Street Imp. Dist. No. 32,* 164 Ark. 407), it may be said that the commissioners appropriated $5 of the city's funds to aid in the construction of the improvement, thus bringing the estimated cost below the assessed betterments. This donation brought the cost of the improvement below the betterments assessed against the property, and answers the objection that the cost exceeded the betterments. *McDonnell* v. *Imp. Dist.,* 97 Ark. 334; *Shoffner* v. *Dowell,* 168 Ark. 229.

Upon the whole case, we conclude that the attack upon the validity of the district is without merit; and the

decree of the court below invalidating the district will therefore be reversed, and the cause remanded with directions to dismiss the complaint for want of equity.