No. 19,157.

SHIRLEY M. BURKS, ET AL. *v.* CITY OF LAFAYETTE, ET AL.

(349 P. [2d] 692)

Decided February 29, 1960.

Mr. Lindsey R. Wingfield, for plaintiffs in error.

Mr. R. Jerry Russell, Mr. John M. Sayre, Mr. Richard F. Hansen, for defendants in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

The plaintiffs in error, who will be here referred to as plaintiffs, seek review of a judgment of the district court

dismissing their complaint which demanded injunctive and mandatory relief against the council of the City of Lafayette. As tax-paying electors, plaintiffs presented to the city council a referendum petition demanding the repeal of Ordinance No. 355 which provided for an improvement district within the city of Lafayette, Colorado, in order to carry out a program of street paving. The ordinance in question declares:

"An emergency exists for the preservation of the public health, peace and safety."

The city council took the position that it was not required to take action on the referendum petition by reason of inclusion in Ordinance No. 355 of the above safety declaration. Thereupon, plaintiffs filed this action in the district court and following dismissal of their complaint bring the matter here by writ of error.

The Charter of Lafayette contains detailed provisions for the enactment of legislation. In general an ordinance may be *enacted* only at a meeting following the meeting at which it is introduced, *and* after intervening publication. Further, the effective date may not be earlier than ten days after enactment nor before there has been publication. An exception is made in the case of "emergency" legislation so that it may be made effective as of the date of its enactment. [Sec. 7.3.]

It also provides that:

" * * * a referendum on an enacted ordinance may be made by petition * * * " and that a valid referendum petition requires the signatures of at least "ten per cent of the number of persons who were registered electors of the city, as of the date of the last regular city election." The submission of such a petition:

"Shall automatically suspend the operation of the ordinance in question pending repeal by the Council or final determination by the electors."

Limitations are imposed on the repeal by referendum of an ordinance enacted by initiative and on the re-

enactment of ordinances repealed by referendum but none of these limits are absolute since it is:

" * * * provided, however, that any ordinance may be adopted, amended or repealed at any time by appropriate referendum or initiatory procedure in accordance with the foregoing provisions of this chapter or if submitted to the electorate by the Council on its own motion."

Thus, even though the Council can declare that the measure is necessary for the preservation of health and safety, there is no express Charter limitation on the power of referendum itself.

Plaintiffs contentions are:

That the City of Lafayette is a home rule city under Article XX of the Constitution of Colorado, and that as such it has the power to adopt a Charter which places no restriction on the exercise of the referendum power by the people; that although the Charter of Lafayette authorizes the Council to make legislation effective immediately by use of a safety clause, it does not restrict the referendum power in such case since it expressly provides that a matter can be referred for repeal even after it becomes law. They argue further that this charter provision is not in conflict with Article V, Section 1 of the Constitution — contending that such constitutional provision does not limit the referendum power in a home rule city.

Defendants argue that a safety clause in an ordinance operates to make the legislation immediately effective, and that Article V, Section 1 of the Constitution serves to limit the exercise of the referendum for home rule cities in the same way that it limits its exercise in the area of state legislation. That though this is not expressly set forth in the Constitution it is necessarily implied, and different interpretation would mean that the voters in a home rule city would have more referendum power than the voters of the state in relation to the General Assembly. Defendants rely on this Court's decision in *Shields v. City of Loveland*, 74 Colo. 27, 218 Pac. 913.

The pertinent home rule provision of the Colorado Constitution provides:

"Each charter shall also provide for a reference upon proper petition therefor, of measures passed by the council to a vote of the qualified electors, and the initiative by the qualified electors of such ordinances as they may by petition request." *Article XX, Section 5, Colorado Constitution.*

The section reserving the referendum reads:

"The second power hereby reserved is the referendum, and it may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety and appropriations for the support and maintenance of the department of state and state institutions, against any act, section or part of any act of the general assembly, either by a petition signed by five per cent. of the legal voters or by the general assembly.

\* \* \*

"The initiative and referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality as to all local, special and municipal legislation of every character in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws, except that cities, towns and municipalities may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent. of the legal voters may be required to order the referendum \* \* \* in any city, town or municipality." *Article V, Section 1, Colorado Constitution.*

The effect of the applicable provision of Article XX is to require that referendum and initiative provisions be included in home rule charters. It does not specify as to the scope and extent of the power but the presence of this provision indicates the importance of this reservation.

Article V, Section 1 is specific in excepting from the

referendum reservation "laws necessary for the immediate preservation of the public peace, health or safety." This provision is of course applicable to the General Assembly and to state laws, and the question is whether it also limits the power of the referendum in home rule cities and is incorporated in every city charter whether actually included or not. In other words, does this provision limit the referendum at the local level as at the state level regardless of whether it is so spelled out in the charter? To conclude that the referendum is so limited requires a holding that Article V, supra, is not only a reservation of power but is also a limitation on the extent of the power which can be exercised by the people under any circumstances.

It is noteworthy that the General Assembly has not so interpreted it. By enacting C.R.S. '53, 70-1-16, applicable to *non*-home rule cities, which statute authorizes the councils of such cities to enact ordinances with safety provision, the Assembly recognized that there was no maximum limitation of the referendum power. The Assembly could have, in enacting this statute, *eliminated* the safety restriction on the referendum reservation and it would have been consistent with Article V, supra.

The fact that the General Assembly has the dispensing authority within its own area in that it can eliminate the safety clause from legislation except appropriation measures at its discretion, also supports the view that the power of referendum is not completely circumscribed by the authority of the legislature or council to declare that a statute or ordinance is one governed by considerations of public health and safety. Thus, the Assembly could not reduce the authority of the voters to exercise the referendum below that which is set forth in Article V, supra, but if the Assembly were to decide that a measure should be subject to referendum it can omit the safety clause and by so doing subject the measure to referendum regardless of whether it in fact affects the health and safety. On the same principle the Assembly

can grant or withhold from the council of a non-home rule city the power to declare health and safety, and by 70-1-16, supra, it has chosen to authorize the exercise of the power by councils of such cities. The foregoing serves to show the scope and extent of the referendum. The section (70-1-16) does not apply to the home rule city.

Inasmuch as the home rule city has the power to adopt its own charter and can within its sphere exercise as much legislative power as the Legislature, it follows that such a city has authority to either restrict the power of referendum by allowing its council to declare health and safety or it may validly reserve a full measure of referendum authority to the voters of the community by not restricting it — by providing that it shall be exercisable with respect to *any* measure — even those measures which have become effective.

It follows from the above that a home rule city council in enacting ordinances does not have a power, constitutional or legislative, to declare peace, health and safety to the detriment of the rights of the citizens to exercise the referendum. A home rule city may adopt a charter which reserves to the voters authority to refer all measures, and which does withhold from the council power to thwart referendum by the expedient of declaring health and safety. Such a charter provision is valid and we see no reason for implied incorporation within it of the safety exception.

The interpretative approach to the power of referendum which gives broad effect to the reservation in the people and which refrains from implying or incorporating restrictions not specified in the Constitution or the charter is supported by the terms of Article V. Being a reservation to the people, it should not be narrowly construed. On the other hand, there should be strict construction of the grant of authority which would nullify the referendum, and no good reason is apparent for extending it by implication or by reference. This

viewpoint has support in the cases. *Brown v. Boyd,* 33 Cal. App. (2d) 416, 91 P. (2d) 926; *Hopping v. The Council of the City of Richmond,* 170 Cal. 605, 150 Pac. 977. In the *Richmond* case the Supreme Court of California said:

" * * * The declaration of the Constitution that its provisions do not affect or limit the referendum power reserved to the people of any city by its charter does not limit the constitutional reservation, nor enlarge those reserved by such charter. The two reservations are thereby made independent of each other. The constitutional reservation goes to the full extent expressed by its language. If the charter differs from the Constitution in any respect, it does not thereby diminish the power reserved by the Constitution. On the other hand, if the powers reserved by the charter exceed those reserved in the Constitution, the effect of the charter would be to give the people the additional powers there described. Long v. Portland, 53 Or. 92, 98 Pac. 149, 1111."

*State ex rel. Snyder v. Board of Elections of Lucas County,* 78 Ohio App. 194, 69 N.E. (2d) 634, app. dismissed as moot, 146 Ohio St. 556, 67 N.E. (2d) 322 involved much the same general problem as that presented here. That was a suit to restrain submission to the electors of an ordinance imposing a one per cent city payroll tax. The Charter of the city allowed the submission. It declared that every ordinance was subject to referendum. The Constitution of the State excepted tax measures from the referendum. The Ohio court determined the question with reference to the philosophy of the home rule amendment and concluded that a home rule charter was not subject to the constitutional limitation on referendum, holding that the limitation on the referendum did not operate to take away the powers granted by the home rule amendment. The court there said:

" * * * In other words, does Section 1d, supra, limit the apparently very broad and absolute power given by

Section 3, Article XVIII of the Constitution to municipalities 'to exercise all powers of local self-government' and the referendum power reserved by Section 1ƒ of Article II, supra, to the people of each municipality 'on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action?'

"In support of the affirmative answer for which the relatrix contends, she cites some of the record of the discussion of those sections in 1 Constitutional Convention of 1912, Proceeding and Debates, 554, 733, 851, 943, 945.

"From the cited record it appears clear, by their discussion and several drafts of these sections relating to the referendum, that the members had in mind restrictions on state-wide measures enacted by the General Assembly, and not restrictions on the powers of the people of municipalities over the ordinances passed by their councils relating solely to their local affairs.

* * * * *

" * * * Looking to the broad—near absolute—powers conferred upon municipalities by Section 3, Article XVIII of the Constitution 'to exercise all powers of local self-government' and safeguarded to the people by referendum as expressed in Section 1ƒ, Article II, 'on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action,' this court can but conclude that the charter provisions expressly reserving to the people of Toledo the right of a referendum vote on this tax ordinance are valid and are not in any way repugnant to the Constitution. To hold otherwise would be 'giving the Constitution a strained construction,' would be obstructing 'the object clearly sought to be attained by such provision/ and would be denying to the voters of the city a right which the Constitution expessly gives them in Section 1ƒ of Article II of the Constitution."

Article XX is similar to the counter-part provision of

the Ohio constitution in that it grants very extensive authority to home rule cities to exercise jurisdiction over local matters. It provides in part:

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right."

The fact that the Lafayette Charter does not specifically grant referendum in the particular matter, as done in the Toledo Charter in the *Snyder* case supra, is not a significant difference. By its reservation of referendum with respect to all ordinances the result is the same.

■ We consider *Shields v. City of Loveland,* 74 Colo. 27, 218 Pac. 913, relied on by the defendants, inapplicable to the case at bar. It was there held that the emergency clause limitation on referendum is applicable to cities and towns. The statute, C.R.S. '53, 70-1-16, which, as indicated above, grants to the councils of cities the power to limit referendum by invoking the safety clause, was as we view it the key to that decision. It appears, however, from the record here that Loveland was not a home rule city, and the statute is, therefore, not here applicable. The home rule city does not derive its powers over local matters from the General Assembly. The home rule city is created and derives its powers from Article XX, and consequently *Shields v. Loveland,* supra, is not authority here. The comments on rehearing in the *Shields* case are not inconsistent with the position which we here adopt.

■ Defendants further argue that the language in Article V, Section 1 that "The initiative and referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality as to all local, special, and municipal legislation of every character * * * " operates to restrict

the referendum within the same boundaries as they exist at the state level. We do not consider the quoted provision as one of maximum limitation. Its only limiting effect is from the standpoint of the minimum referendum which must be reserved to the people of a locality.

It is finally urged by defendants that the particular ordinance is *special* and for that reason is not subject to referendum. They cite 14 *McQuillin, Municipal Corporations,* Sec. 38.48 (3d ed. 1950); *Paving District No. 36 v. Little,* 170 Ark. 1160, 282 S.W. 971; *Allen v. City of Butte,* 55 Mont. 205, 175 Pac. 595, and contend that the referendum is applicable only to general legislation and that an ordinance for an improvement district is limited in scope. The Lafayette Charter makes no such distinction. It provides in Section 7.13 that "any ordinance may be adopted, amended or repealed at any time by appropriate referendum or initiatory procedure * * *." Thus it would appear that under the express terms of the Lafayette Charter the present ordinance is subject to referendum even though it provides for the creation of a special improvement district. If, however, it were shown that the present ordinance relates exclusively to a segment of the town of Lafayette and that only the people within the district are affected; that the people in the remainder of the city have no interest direct or indirect in the measure, the "special ordinance rule" which defendants seek to invoke might be inapplicable. *Protest* (under the Lafayette Charter) by the inhabitants of the district rather than a city wide referendum would then be the remedy. No such case is apparent from the record before us. If defendants were depending upon such a theory it was incumbent upon them to insert in the record facts establishing a basis for the application of this principle. This they have failed to do.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.