**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GLEN E. STINSON, individually and
as TRUSTEE FOR GLEN E.
STINSON PENSION AND PROFIT
SHARING PLAN and GLEN E.
STINSON, P.C.,

   Plaintiffs-Appellants,

v.

CITY OF CRAIG, COLORADO,

   Defendant-Appellee.

No. 98-1354
(D.C. No. 97-M-2388)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** and **KELLY** , Circuit Judges, and **BROWN** ,** Senior
District Judge.

---

*  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**  Honorable Wesley E. Brown, Senior District Judge, United States District
Court for the District of Kansas, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In July 1997, Glen Stinson, a resident of Georgia, and his Georgia corporation (collectively, "Stinson") entered into a contract to purchase from the City of Craig ("City") approximately 500 acres of property located in Routt County, Colorado. The City later contended that the contract was void and refused to close on the sale. Stinson then filed suit, alleging the City had breached the contract and seeking a declaratory judgment, specific performance, consequential damages, and injunctive relief. After hearing argument on the parties' cross-motions for summary judgment, the district court ruled in favor of the City. The district court concluded that the contract was void because the city council was required by state law to pass an ordinance approving the sale, and it did not do so. Therefore, the court ordered the City to return Stinson's earnest money, with interest. Stinson now appeals. We exercise jurisdiction over this appeal under 28 U.S.C. § 1291 and reverse and remand for further proceedings.

The City of Craig is a home rule city and, as such, derives its powers over local matters from Article XX, § 6 of the Colorado Constitution, not from the General Assembly. *See Burks v. City of Lafayette*, 349 P.2d 692, 696 (Colo.

1960) (en banc).  "[A]dopted by the voters in 1912, [Article XX, § 6] granted 'home rule' to municipalities opting to operate under its provisions and thereby altered the basic relationship of such municipalities to the state." *City & County of Denver v. State*, 788 P.2d 764, 766 (Colo. 1990) (en banc).  "In effect, the amendment vested home rule municipalities with their own sphere of sovereignty, providing them with every power theretofore possessed by the legislature to authorize municipalities to function in local and municipal affairs." *U.S. West Communications, Inc. v. City of Longmont*, 948 P.2d 509, 517 (Colo. 1997) (en banc) (citation and quotation omitted).  "[T]he home rule city has the power to adopt its own charter and can within its sphere exercise as much legislative power as the Legislature . . . ." *Burks*, 349 P.2d at 695.  Statutory cities, on the other hand, "possess only such powers as are expressly conferred by statutory grant or exist by necessary implication." *City of Sheridan v. City of Englewood*, 609 P.2d 108, 109 (Colo. 1980) (en banc).

At issue here is the effect of Colo. Rev. Stat. § 31-15-713(1)(b), which provides that "[t]he governing body of each municipality has the power . . . [t]o sell and dispose of, by ordinance, any . . . real estate [not used or held for any governmental purpose]."  The parties do not dispute that the sale of municipal property is a matter of local concern.  *Cf.* Colo. Const., Art. XX, § 1 (creating the City and County of Denver as a home rule city and providing, among other things,

that it "may purchase, receive, hold, and enjoy or sell and disposed of, real and personal property"). Although the General Assembly may legislate in matters of local concern, "when a home rule ordinance or charter provision and a state statute conflict with respect to a local matter, the home rule provision supercedes the conflicting state provision." *City & County of Denver*, 788 P.2d at 767. Where not superceded by a conflicting charter or ordinance, however, the state's statutes apply to home rule cities. *See* Colo. Const., Art. XX, § 6.

Although the statute's use of the term "municipality" includes home rule cities, *see* Colo. Rev. Stat. § 31-1-102(1), whether the statute was intended to limit a home rule city's ability to sell real property is not clear from the statutory scheme. *See id.* (stating that "use of the term 'municipality' . . . shall not in and of itself create a presumption for or against preemption of home rule . . . powers"); *id.* § 31-15-104 ("The enumeration of powers set forth in this title shall not be construed to limit the exercise of any other power granted to municipalities by the provisions of any other law of this state."). Nor have we found any cases from the Colorado courts discussing the effect of § 31-15-713 on home rule cities.

Proceeding from the general principle that state statutes apply to home rule cities in the absence of conflicting charter provisions or ordinances, the City argues that by granting the power to sell municipal property only by ordinance, § 31-15-713(1)(b) prohibits a city from selling real estate by other means. The

City further argues that this prohibition does not conflict with any charter provision or ordinance adopted by the City. Therefore, the City contends that it could not sell the subject property to Stinson without passing an ordinance approving the sale and, in the absence of such an ordinance, the contract for sale was void.

Stinson argues that the statute does not limit the City's power to sell real estate, based on three alternative theories. First, he contends that the statute is only an enabling statute, and its grant of power to sell real property by ordinance does not prohibit the sale of real property by other means. Second, he contends that even if the grant of power in the statute carries with it a limitation on the exercise of that power, the limitation applies only to cities that derive their power from the General Assembly. Because the City derives its power to sell real estate from the Colorado Constitution and its own charter, any limitation in the statute does not apply to the City. Finally, Stinson argues that if the statute does purport to limit the City's power to sell real estate, the statute is superceded by conflicting provisions in the City's charter.

We find support for Stinson's position in Colorado's case law. For instance, in *Schaefer v. City & County of Denver*, 973 P.2d 717, 719 (Colo. Ct. App. 1998), *cert. denied*, (Colo. Apr. 12, 1999), the court considered whether language in Colo. Rev. Stat. § 10-7-203 granting municipalities the power to

provide life, health, or accident insurance as a benefit for their employees limited the ability of Denver, a home rule city, to extend insurance coverage to "spousal equivalents" of its employees. The court concluded that "[w]hile other entities listed in the statute may require statutory authority to offer group insurance as an employee benefit, home rule cities derive that power from Article XX, Section 6 of the Constitution . . . ." *Id.* at 720. Because "home rule cities in Colorado need not rely on § 10-7-203 for authority to purchase and offer group health insurance policies as employee benefits," the court concluded that the statute did not "limit[], or intend[] to limit, the power of a home rule city to design and implement group health programs for its employees." *Id; see also Burks*, 349 P.2d at 697 (concluding that statute granting cities the power to limit referendum on an ordinance by invoking the safety clause did not apply to home rule city because it derived its powers over local matters from the Colorado Constitution, not from the General Assembly).

Here, the City's charter grants it the power to "purchase, receive, hold and enjoy, or sell and dispose of, real and personal property." Plaintiffs/Appellants' Fed. R. App. P. 28(f) Legal Authority Pamphlet ("Pamphlet"), Tab C, at C-1, § (2)(b). Therefore, the City had the power to sell the subject property even in the absence of the grant of power by § 31-15-713(b)(1). Pursuant to the *Schaefer* court's rationale, even if we adopt the district court's interpretation of

§ 31-15-713(b)(1) as granting only a limited power to sell real estate, that limitation would not apply to the City, because the City does not derive its power from the statute.

Moreover, even if we interpret § 31-15-713(b)(1) as intending to limit the power of home rule cities to sell municipal real estate, we agree with Stinson that the statute conflicts with the powers granted by the City's charter and, therefore, is superceded by the charter. Although the City's charter does not contain a specific provision concerning the means by which municipal real property may be sold, its general provisions speak to the matter. Thus, the charter vests "[a]ll powers of the City" with the city council, except where otherwise provided, including the power to sell and dispose of real property. Pamphlet, Tab C, at C-2, § 5; C-1, § (2)(b). The charter provides that the city council may exercise certain powers only by ordinance, *see id.* at C-2, § 5(a), and otherwise provides that the city council "shall act by ordinance, resolution or motion," *id.* at C-4, § 12(a). The power to sell real property is not among those that may be exercised only by ordinance. Applying the familiar canon of statutory construction[1] "expressio unius est exclusio alterius"--the expression of one thing implies the exclusion of

---

[1] "Rules of statutory construction apply to municipal charters and ordinances as well as to statutes." *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 519 (Colo. Ct. App. 1998).

the other--we conclude the charter grants the City the power to sell real estate by ordinance, resolution, or motion.

In determining whether a local charter or ordinance conflicts with a state statute, the essential inquiry is whether the charter or ordinance authorizes what the statute forbids or forbids what the statute expressly authorizes. *See, e.g., City of Aurora v. Martin*, 507 P.2d 868, 869-70 (Colo. 1973) (en banc). If we interpret the statute's grant of power to sell real property by ordinance as intending no limitation on a home rule city's power to sell real property by other means, then the statute is not in conflict with the City's charter and the two can co-exist. If, however, we interpret the statute's grant of the power to sell real property by ordinance as impliedly forbidding the sale of real property by other means, then the statute conflicts with the City's charter. In the event of a conflict between the statute and the charter on this matter of local concern, the charter prevails. Thus, under either interpretation of the statute, the City maintains the power to sell real property by ordinance, resolution, or motion until the people of the City of Craig choose to change the charter.

Having concluded that the statute does not require the City to sell real property by ordinance only, we conclude that the contract between Stinson and the City is not void for lack of an ordinance approving it. Stinson has steadfastly maintained that the motion passed by the city council accepting his bid on the

subject property constituted a motion approving the sale, and the City has never disputed this contention. Therefore, we conclude the district court erred in ruling the contract void and unenforceable. Because the district court concluded the contract was void, it did not consider whether the City was in breach of the contract, or to what relief Stinson may be entitled as a result. These remaining issues should be resolved on remand.

The judgment of the United States District Court for the District of Colorado is REVERSED, and the case is REMANDED for further proceedings in light of this order and judgment.

Entered for the Court

Stephen H. Anderson
Circuit Judge