No. 23832.

CITY OF ASPEN, A MUNICIPAL CORPORATION *v.*
SAMUEL W. HOWELL.
(459 P.2d 764)

Decided September 29, 1969. Rehearing denied November 3, 1969.

Kohn & Howe, Charles B. Howe, for plaintiff in error.

Nelson, Hoskin & Groves, John W. Groves, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

This is an action to review the validity of an annex-

ation conducted under the provisions of the Municipal Annexation Act of 1965, 1965 Perm. Supp., C.R.S. 1963, 139-21 [hereinafter cited as Annexation Act]. By a small majority, the voters in the territory to be annexed expressed their preference for annexation by the City of Aspen. On the petition of Samuel Howell, the defendant in error here, the district court ruled that the election was invalid. The City of Aspen contends here that the court erred in ruling (a) that certain errors of procedure were committed; and (b) that absentee ballots should not have been permitted. Howell assigns cross-error to a portion of the judgment which held that nonresident landowners could vote. We agree with the contentions made by Aspen, and therefore reverse the judgment of the trial court holding that the election was void.

I.

The terms of the Annexation Act, Sections 1 to 6, authorize two methods of annexation. Section 6(1) provides that, under stated conditions, certain landowners of eligible property may petition for annexation without an election. Section 6(2) authorizes certain qualified electors residing within eligible territory, again under stated conditions, to petition for an annexation election. Section 6(3) provides further that the foregoing procedures are alternative to each other, "except that a petition for annexation election filed pursuant to Section 6(2) shall take precedence over an annexation petition involving the same territory and filed pursuant to Section 6(1)...."

From stipulated facts, the trial court found that the annexation petition was filed on July 17, 1967. Pursuant to the Annexation Act, Section 7, the city council found on the same day that the petition met the statutory requirements and set August 21 for a hearing. Notice was published. On August 10, the election petition was filed. Without starting over again under Section 6(2) to determine whether the election petition met the statutory requirements, and to set another hearing date, the city

council held a public hearing on August 21, the date originally scheduled. After the hearing, the city council passed its resolution finding that the *election petition* met the statutory requirements, and directed election procedures to be initiated.

Howell relies on the provision that a "petition for annexation election . . . shall take precedence over an annexation petition" to support his contention that, when the election petition was filed, all actions under the annexation petition should have been abandoned, and a new procedure should have been initiated under Section 6(2). See Annexation Act, Section 6(3). We disagree.

The purpose of the Annexation Act, as stated by the legislature, is to provide for the "orderly growth of urban comunities" in this state. See Annexation Act, Section 2(1)(a). The legislature has further directed that the Act shall be construed liberally to implement certain stated purposes, among them, "to extend municipal government services and facilities to eligible areas which form a part of the whole community." Annexation Act, Section 2(1) (d) and (h). The rule which Howell would have us adopt would require us to set aside an election in which the majority of the electors voted for annexation. In view of our legislative mandate to construe the statute liberally so as to expedite the extension of governmental services to eligible territories, we will not narrowly construe the statute to require a city council to make essentially the same determination which it had made a few days earlier, and to set a second date for hearing.

Except for differences regarding the qualifications of the petitioners, the procedure under both Sections 6(1) and 6(2) is substantially the same. Similarly, the matters inquired into by the city council, and the findings which it is required to make, are substantially the same, except for a determination whether an election itself is required. See Annexation Act, Sections 7 and 9. Once the

city council determines that an election is required, then the procedures to be followed are set forth in accordance with the Annexation Act, Section 11.

██ In this case, both petitions concerned the same territory, and the election was held as requested by those who signed the election petition. Notice of the election was published in each of four consecutive weeks. It is true that the procedure followed involved the loss of several weeks between the filing of the election petition and the election during which those opposed to the annexation may have had time to polarize even greater opposition. But the expressed policy of the Annexation Act is "[t]o encourage natural and well-ordered development of municipalities," not to discourage it by setting aside an election *already held* in a manner which affords the free and fair expression of the popular will. See *Felzien v. School District RE-3 Frenchman,* 152 Colo. 92, 380 P.2d 572. Laws merely regulating an election are usually regarded as directory, and hence a departure from the mode prescribed will not ordinarily vitiate the election. *E. McQuillin, Municipal Corporations* § 12.10 (3d ed. rev.).

II.

The parties have stipulated that the results of the annexation election were as follows:

| | For Annexation | Against Annexation |
| --- | --- | --- |
| Absentee Ballots | 37 | 18 |
| Resident Ballots | 62 | 67 |
| Totals | 99 | 85 |

██ In its judgment, the trial court concluded, however, that since the Annexation Act makes no specific provision for absentee balloting in annexation elections, the absentee ballots reflected *supra* should not have been counted. The Colorado Municipal Election Code of 1965, 1965 Perm. Supp., C.R.S. 1963, 49-25-1, *et seq.* [hereinafter cited as Municipal Election Code], which expressly provides for absentee voting at 49-25-92, *et seq.,* was held inapplicable to this election. We disagree.

The former municipal election law, C.R.S. 1963, 49-22-1, *et seq.*, had been made inapplicable to the former annexation statute, C.R.S. 1963, 139-10-1, *et seq.*, by the terms of C.R.S. 1963, 49-22-160(4). Apparently because the former annexation statute contained insufficient detail to guide an annexation election, the legislature in 1965 expressly made the provisions of the newly-enacted Municipal Election Code applicable to annexation elections by amendment of the annexation statute. Colo. Sess. Laws, ch. 303, § 29(d) (1965). The amendment was obviously intended as a stopgap measure, for it became effective on August 1, 1965, and was repealed by the Municipal Annexation Act of 1965 when the latter act took effect on January 1, 1966.

■ Unlike the stopgap measure, the new Annexation Act did not expressly provide that annexation elections should be governed by the provisions of the Municipal Election Code. Howell contends here that the legislature's omission reflects its intent that the provisions of the Municipal Code should not apply to annexation elections under the new Annexation Act. We disagree.

In view of certain changes in the Municipal Election Code, no express reference was necessary. The former municipal election law contained extensive detail to specify which of numerous elections should or should not be governed by its provisions. See C.R.S. 1963, 49-22-160. All such references and limitations, however, were deleted from the new Municipal Election Code, which has general applicability to "regular and special municipal elections." Municipal Election Code, 49-25-181. Thus the legislature's deletion of a specific provision that annexation elections should be governed by a designated election law must be read in context with its contemporaneous action in providing that the Municipal Election Code shall apply generally to municipal elections. Under these circumstances and since the legislature has pointed out that the purpose of the Annexation Act is to extend municipal government to eligible areas, we

deem it the legislative intent that the term "special municipal elections" as contained in the Municipal Election Code, extends to annexation elections.

We hold, therefore, that the Municipal Election Code applies to elections under the Annexation Act to the extent that its terms are not inconsistent with the specific provisions of the Annexation Act. Cf. *City of Milwaukee v. Sewerage Commission,* 268 Wis. 342, 67 N.W.2d 624; *Powers v. Monahan,* 85 R.I. 398, 132 A.2d 97. In so construing the statutes, we adhere to the principle that laws enacted during the same session of the legislature should be harmonized if possible, particularly where they deal with interrelated subjects, as in the present case. See *Rowland v. Theobald,* 159 Colo. 1, 409 P.2d 272.

We have not overlooked the general rule that absentee voter statutes should be strictly construed, and that the voter who wishes to cast an absentee ballot must comply with all the statutory requirements. See *Bullington v. Grabow,* 88 Colo. 561, 298 P. 1059. There is no contention in the present case, however, that the absentee ballots were improper under the Municipal Election Code. Instead, Howell contends that the Annexation Act makes no provision for absentee voting. With that contention we cannot disagree. As we have held, the legislature intended to make the Municipal Election Code, which expressly provides for absentee ballots, applicable generally to municipal elections. And since the Municipal Election Code provides that the Municipal Election Code should be construed liberally so that all legally qualified electors may be permitted to vote, we hold that the Municipal Election Code by its terms authorized the absentee ballots in question here.

To require that the legislature must specifically provide for absentee ballots within a given statute, in addition to provisions that the Municipal Election Code shall be applicable, would in effect require the legislature to rewrite many of the statutes which presently provide only that the Municipal Election Code shall apply. In

a similar case, even though an absentee voting statute made no direct mention of absentee voting in city elections, one court has, nevertheless, permitted absentee ballots on the basis of a general section providing that the provisions of the statute shall apply to city elections. *Wood v. State ex rel. Lee*, 133 Tex. 110, 126 S.W.2d 4, 121 A.L.R. 931.

### III.

 Howell has assigned cross-error to the trial court's ruling that nonresident landowners of the territory to be annexed are entitled to vote in annexation elections. The terms of the Annexation Act, Section 11(1)(c) provide that an election shall be called to determine whether a majority of the "qualified electors residing within the territory" approve such annexation. But Section 11(2) provides that any "landowner owning land" in the territory may vote, *"irrespective of whether he is a qualified elector"* (emphasis added). "Landowner" means the owner in fee of any undivided interest in a given parcel of land. Annexation Act, 139-21-21(8). "Qualified elector," on the other hand, means a *"resident landowner"* (emphasis added). Annexation Act, Section 21(10). Another pertinent section provides that the commissioners shall forthwith call an election of "all the qualified electors, or qualified electors and landowners ...." Annexation Act, Section 11(5).

In view of the specific provision in Section 11(2) that a landowner may vote irrespective of whether he is a qualified elector, which entails residency, and the further recognition in Section 11(5) that qualified electors and landowners may be two separate groups, both entitled to vote, we conclude that the legislature intended to permit a nonresident landowner to vote in an annexation election. A contrary construction could render the entire statute void for lack of equal protection, for it expressly provides in Section 11(2) that "any corporate landowner" may by resolution designate one of its officers to cast its votes. In accord with familiar rules of statutory

construction, the specific provisions must be held to prevail over the general provisions. To the extent that this construction conflicts with the residency requirements of the Municipal Election Code, those provisions are held to be superseded by the provisions of the Annexation Act.

The trial court did not err in its ruling that a non-resident landowner could vote, although it did err in its judgment setting aside the election.

The judgment is reversed.

MR. JUSTICE LEE dissents.

MR. JUSTICE GROVES not participating.