No. 24646

F. Leonard Pomponio, Rose Marie Pomponio, Yolanda Pomponio, Northgate Shopping Center, Inc., and F. Leonard Pomponio, Rose Marie Pomponio, and Yolanda Pomponio as Co-Executors of the Estate of Felix Pomponio, deceased v. The City of Westminster, a Municipal corporation, existing in the County of Adams and State of Colorado, under and by virtue of the laws of the State of Colorado; The City Council of the City of Westminster; and Marshall F. Dodson, Vi June, Gilbert Bean, Harvey England, Harold Peterson, Donald Koch, and Jarold F. Harris, individually and as members of and being and constituting the said City Council of the City of Westminster

(496 P.2d 999)

Decided April 3, 1972.          Rehearing denied May 30, 1972.

Creamer & Creamer, George Louis Creamer, for plaintiffs in error.

Holland & Hart, Warren L. Tomlinson, Edwin S. Kahn, Stitt, Wittenbrink & Roan, James R. Stitt, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This case involves the validity of the unilateral annexation of three tracts of land by the City of Westminster pursuant to 1965 Perm. Supp., C.R.S. '1963, 139-21-5(2). Plaintiffs in error F. Leonard Pomponio, Rose Marie Pomponio, and Yolanda Pomponio own one tract; another is in the Estate of Felix Pomponio; and a third is owned by Northgate Shopping Center, Inc., the stock of which is held solely by the Pomponios.

The Westminster City Manager sent a letter to Felix Pomponio, since deceased, and to F. Leonard Pomponio, indicating the city's intent to annex the three tracts and informing them that a public hearing was scheduled for April 8, 1968. Shortly after this notice, but prior to the hearing, Felix Pomponio transferred by deed to Northgate Shopping Center, Inc., approximately four acres necessary to create (and which did place in the corporation's name at least nominal title to) a parcel of land in excess of 20 acres within the territory to be annexed. This then was used as the basis for claim for exemption as provided in 1965 Perm. Supp.,

C.R.S. 1963, 139-21-4(3), which will be discussed later. The Pomponios and the corporation appeared, through counsel, at the public hearing and also presented many additional objections to the proposed annexation. On April 22, 1968, the Westminster City Council made findings, substantially in the terms of sections 139-21-5(2) and 139-21-4(3), favorable to the annexation, and concluded that all the territory was eligible.

Thereafter, an ordinance was passed by the City Council annexing the area to Westminster. The Pomponios and the shopping center sought review in the district court which, after return was made by the city, dismissed the complaint. To that judgment writ of error issued out of this court. We affirm.

I.

■■ The Pomponios first contend that certain of the City Council's findings were legally insufficient. The two questioned findings paraphrase section 139-21-4(3) and section 139-21-5(2)(a), but we hold that such findings of ultimate fact in terms of the statute are sufficient where they are based on evidence not specifically controverted by other evidence in the record made before the City Council. *Compare Lininger v. Lininger,* 138 Colo. 338, 333 P.2d 625 (1959), with *Johnston v. City Council of Greenwood Village,* 177 Colo. 223, 493 P.2d 651 (1972). In the instant case, the only contradictory evidence relied upon by the Pomponio interests involves the transfer of land to the shopping center noted above. Section 139-21-4(3) provides that land held in identical ownership in excess of twenty acres which, together with improvements thereon, has an assessed value in excess of $200,000 for the year next preceding the annexation shall not be included in a unilateral annexation without the written consent of the owner or owners. There is no question that the value qualification is met with regard to the shopping center, and there is also no question that the Pomponio interests did not and will not consent to annexation. It is asserted, consequently, that the entire annexation may fail due to the exclusion of this land since it borders on

the contiguous boundary. Section 139-21-5(2)(a).

The transfer of land occurred after the requisite time for unilateral annexation had accrued and after notice of intent to annex was delivered to the Pomponios, although prior to the public hearing. Pomponios' counsel indicated in the district court that the only reason for the transfer was to come within the provisions of section 139-21-4(3). The district court, however, found the sole purpose of the transfer to be the defeat of the annexation. It is abundantly clear that the deed was a tactical maneuver with no legitimate business purpose. *See Cline v. Boulder,* 168 Colo. 112, 450 P.2d 335 (1969), wherein we held that rezoning would effectively prevent use of a building permit obtained in a race against a zoning ordinance.

We do not believe the legislature intended section 139-21-4(3) to be employed as a tactic such as used herein. The policy of the enactment is "[t]o encourage natural and well-ordered development of municipalities," not to discourage it by providing for last minute maneuvers designed *only* to defeat annexation. Section 139-21-2(1)(b). *Aspen v. Howell,* 170 Colo. 82, 459 P.2d 764 (1969). It is apparent from the maps before us that the annexed territory is surrounded on three sides by Westminster, and that the effect of the annexation is to eliminate partly surrounded territory and to "square off" or "straighten out" the city's southern boundary. At the public hearing, the Westminster City Mayor remarked that such result was a prime motive behind the proposed annexation. Under the circumstances, the Westminster City Council properly refused to recognize the transfer as valid to create a whole parcel sufficient to come within the exclusionary provisions of section 139-21-4(3).

II.

The next question raised regards the time and contiguity requirements of section 139-21-5(2)(a). The Pomponios argue that a survey must be made and specific dates established in order for City Council to find that the requirements of section 139-21-5(2)(a) for involuntary annexation are met. We do not agree. City Council can take

official notice of all maps, records and other pertinent information within the city's files to insure a fair disposition of the controversy. *See Denver v. Dore,* 176 Colo. 367, 490 P.2d 694 (1971). In the instant case, a summary of this information was presented by testimony and exhibits in the record at the public hearing before the Westminster City Council. The uncontroverted testimony of the city's Director of Public Works was to the effect that the two-thirds contiguous boundary requirement of section 139-21-5(2)(a) existed for a period of three years prior to February 1968. His testimony was supplemented by a map of the annexed territory specifying the relevant distances, which was prepared by the Director of Public Works, who is also a state licensed and registered engineer. The Director also testified that the linear distances were "* * * based on the existing City limits which are well described in the ordinances of the City; based on the deeds of property involved in the annexation; that is, the southern limits of the annexation; based on known land distances." We conclude that the uncontroverted evidence was both sufficient and competent, and, therefore, supports the finding paraphrasing section 139-21-5(2)(a).

The Pomponios additionally contend that the time factor for annexation is legally impossible under section 139-21-5(2)(a). This section provides in pertinent part for the "[a]nnexation of unincorporated areas which have had more than two-thirds boundary contiguity for a period of not less than three years either *prior to or subsequent to* the effective date of this article [January 1, 1966] with the annexing municipality." (Emphasis added.) The Pomponios argue that, since the finding was made in April, 1968, there could have been no contiguity for a period of three years *subsequent* to the effective date of the Act.

In *Breternitz v. Arvada,* 174 Colo. 56, 482 P.2d 955 (1971), a case involving an interpretation of this same statute, we concluded that a provision thereof was the product of "careless draftsmanship." We reach the same conclusion in this case with regard to section 139-21-5(2)(a),

lest we produce a result that would be an absurdity. *See People v. Kilpatrick,* 79 Colo. 303, 245 P. 719 (1926). For example, such an interpretation as sought here would enable a city to annex a two-thirds contiguous area on January 1, 1966, provided contiguity first existed on January 1, 1963, but would prevent annexation of another property concerning which contiguity first occurred on January 2, 1963, for another three years. There is no logical reason to suppose that the legislature intended the one property to thus be subject to annexation only after six years' lapse of time just because the requisite contiguity did not exist for a full three years prior to the effective day of the Act. We conclude, therefore, that the intendment of section 139-21-5(2)(a) was that the area need only be contiguous for a three-year period, the commencement of which can be either before or after the Act became effective so long as the total time is three years. The uncontroverted testimony in this case was that such a three-year period existed.

### III.

▇ The Pomponios final argument questions the constitutionality of unilateral annexation. Section 139-21-5. Specifically, they assert that the section violates the Fourteenth Amendment to the United States Constitution in that persons within territory proposed to be annexed are not allowed to vote on the annexation. These contentions were fully and adequately answered in *Adams v. Colorado Springs,* 308 F. Supp. 1397 (1970), *aff'd mem.* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970), *reh. denied* 400 U.S. 855, 91 S.Ct. 25, 27 L.Ed.2d 93 (1970). It would only unduly lengthen this opinion to quote extensively from that decision. Suffice it to say:

"Although we concede that the [appellants'] case has equitable appeal, they have not demonstrated a violation of the Fourteenth Amendment of the Constitution in terms of either inequality or due process. Hence, their claim must fail." *Adams v. Colorado Springs, supra.*

*See also Cline v. Boulder, supra; Rogers v. Denver,* 161 Colo. 72, 419 P.2d 648 (1966).

Judgment is affirmed.

MR. JUSTICE HODGES, MR. JUSTICE KELLEY, MR. JUSTICE GROVES, MR. JUSTICE LEE, and MR. JUSTICE ERICKSON concur.

MR. JUSTICE HODGES, MR. JUSTICE GROVES, and MR. JUSTICE ERICKSON specially concur.

MR. CHIEF JUSTICE PRINGLE dissenting.

MR. JUSTICE GROVES specially concurring:

I join in the opinion of Mr. Justice Day.

In addition to a case in which I did not participate and the instant matter, the Municipal Annexation Act of 1965, 1965 Perm. Supp., C.R.S. 1963, 139-21-1 *et seq.* has been before us at least three times. These are cited in Mr. Justice Day's opinion here: *Cline v. City of Boulder,* 168 Colo. 112, 450 P.2d 335 (1969); *Breternitz v. City of Arvada,* 174 Colo. 56, 482 P.2d 955 (1971); and *Johnston v. City Council of Greenwood Village,* 177 Colo. 223, 493 P.2d 651 (1972). With each of these cases I have become increasingly conscious of the ambiguities, contradictions and vagueness of several of the provisions of this Act. The possible unconstitutionality of the Act for these reasons has not been argued in the present case and therefore we should not attempt to rule thereon. I wish to state, however, that my concern in this particular will cause me to lend an attentive ear in the event that it is argued someday that we should prospectively declare this Act unconstitutional for those reasons.

MR. JUSTICE HODGES and MR. JUSTICE ERICKSON join in this special concurring opinion.

MR. CHIEF JUSTICE PRINGLE dissenting:

I respectfully dissent.

In my view, there is nothing in the statute which prohibits one who owns property in the area in which annexation is contemplated from transferring his property to another property holder in the area in order to form a parcel of land in excess of 20 acres eligible for exemption from annexation so long as the transfer is in good faith.

Nothing in this record indicates that the transfer was not in good faith. The statute provides that one who has a 20 acre tract is entitled to be exempt from annexation. The mere contemplation of annexation by the city is not annexation, and it is my view that anyone who has or obtains a plot of 20 acres or more is entitled to such exemption by reason of that fact at any time up until the annexation ordinance is introduced.

I would reverse the judgment.