**Thomas W. SLACK, June B. Baker and Margaret A. Woodring, A.W. Mullan, Jr. and Merle A. Williams, Plaintiffs-Appellees,**

v.

**The CITY OF COLORADO SPRINGS, a municipal corporation, the City Council of the City of Colorado Springs, and as members of the City Council of Colorado Springs, Robert Isaac, George James, Mary Kyer, Lee Duran, Michael C. Bird, Leon Young, Thomas I. Anderson and Peter M. Susemihl, Defendants-Appellants.**

No. 81SC84.

Supreme Court of Colorado,
En Banc.

Nov. 22, 1982.

Rehearing Denied Dec. 13, 1982.

Cleveland, Wengler & Robbins, Edward D. Cleveland, Frank E. Robbins, Colorado Springs, for plaintiffs-appellees.

James G. Colvin, II, City Atty., Jackson L. Smith, Asst. City Atty., M. Allen Ziegler, Jr., Sr. Deputy City Atty., Michael J. Heydt, Deputy City Atty., Colorado Springs, for defendants-appellants.

LEE, Justice.

This is an appeal from the ruling of the District Court of El Paso County which declared void an attempt by the City Council of Colorado Springs to annex land in the southwest area, commonly known as the Broadmoor, Skyway, Stratton Meadows, Ivywild, and Cheyenne Canyon areas of El Paso County. Both the plaintiffs and the defendants in the trial court appealed the judgment, and this court granted certiorari before judgment pursuant to C.A.R. 50, recognizing that this case involves similar parties and interests as were represented in the case of *Cesario v. City of Colorado Springs*, 616 P.2d 113 (Colo.1980). In that case we affirmed the trial court's ruling that a prior attempt at annexation was invalid based upon statutory and procedural grounds.

Soon after *Cesario* was announced, but prior to the issuance of mandate from this court, the City Council of Colorado Springs, appellants here, enacted a resolution expressing the intent to once again annex the southwest area. This court issued its mandate in *Cesario* on September 24, 1980, establishing that the lands involved in the prior annexation attempt remained unincorporated portions of El Paso County. That same date landowners in the area, Slack, et al., appellees, filed petitions with the city clerk requesting an annexation election to determine whether the southwest area should be annexed. Section 31–12–107, C.R.S.1973 (1977 Repl.Vol. 12). More petitions were filed the following morning.

The city clerk advised the city council of the petition filings on September 25, 1980, and the city council referred the petitions to the clerk for a determination whether they were in substantial compliance with the Municipal Annexation Act of 1965, section 31–12–101, *et seq.*, C.R.S.1973 (1977 Repl. Vol. 12) (Annexation Act). Later that day the city council published notice of its proposed unilateral annexation of the southwest area. *See* section 31–12–106(2), C.R.S. 1973 (1977 Repl.Vol. 12).

On October 6, 1980, Slack filed a complaint and a motion for a preliminary injunction in the district court, contending that the city could not proceed with its proposed annexation because of the filing of the Petitions for Annexation Election. On October 14, the city rejected the Petitions for Annexation Election because they improperly proposed to split city-owned land without the city's permission. Slack filed amended petitions on October 20 in an attempt to correct the deficiencies. On October 21, 1980, the district court denied Slack's request for a preliminary injunction.

The city council held a public hearing on October 27, 1980, to discuss the proposed southwest area annexation. Slack appeared and opposed the annexation. The city council rejected the amended Petitions for Annexation Election because they had been filed after the city had commenced unilateral annexation proceedings, and because all of the area described in the election petitions was included in the city's proposed annexation. The city council then adopted the annexation ordinance as an emergency ordinance.

Statewide elections were held on November 4, 1980, and Amendment No. 3 to the Constitution of the State of Colorado was approved by the electorate.[1] That amend-

---

1. That amendment to the Constitution of the State of Colorado may be found at article II, section 30, and reads as follows:

   **"Section 30. Right to vote or petition on annexation—enclaves.** (1) No unincorporated area may be annexed to a municipality unless one of the following conditions first has been met:

   (a) The question of annexation has been submitted to the vote of the landowners and the registered electors in the area proposed to be annexed, and the majority of such per-

sons voting on the question have voted for the annexation; or

   (b) The annexing municipality has received a petition for the annexation of such area signed by persons comprising more than fifty percent of the landowners in the area and owning more than fifty percent of the area, excluding public streets, and alleys and any land owned by the annexing municipality; or

   (c) The area is entirely surrounded by or is solely owned by the annexing municipality.

   (2) The provisions of this section shall not apply to annexations to the city and county

ment allows those living within an area proposed to be annexed to vote on whether the land will be annexed. On November 11, 1980, the city council, on second presentation, adopted the annexation ordinance as a non-emergency ordinance.

Slack challenged the city's actions in the district court and the court ruled that the unilateral annexation proceedings had priority over the petitions for the annexation election. The court also ruled that the alleged ambiguity of the published legal description of the area to be annexed by unilateral action of the city council did not void the annexation ordinance. However, the court held that it was improper for the council to use its emergency powers to accomplish unilateral annexation when the constitutional amendment which would have prohibited such action was to be voted on only a few days later. It also held that the adoption of the annexation ordinance on second reading on November 11, 1980, was without effect because the city had no power to unilaterally annex the area after the passage of Amendment No. 3. Therefore, the annexation attempt failed.

Both plaintiffs and defendants appealed the court's ruling. We reverse.

## I.

The city contends that the trial court erred in declaring the annexation ordinance void and unenforceable because of its enactment as an emergency measure. We agree.

The appellees (Slack) argue that the emergency declarations of the ordinance exceeded the city council's legislative power since the ordinance did not define a "genuine emergency." They argue that the threat of an affirmative vote on Amendment No. 3 did not constitute a genuine emergency, and governmental action taken to emasculate the sovereign power of the people must be condemned. We are not persuaded by these arguments.

■ This court has often held that a legislative declaration of purpose for enacting emergency legislation is conclusive and will not be reviewed in the courts. *Board of County Commissioners v. City and County of Denver,* 193 Colo. 211, 565 P.2d 212 (1977); *Lyman v. Town of Bow Mar,* 188 Colo. 216, 533 P.2d 1129 (1975); *Shields v. City of Loveland,* 74 Colo. 27, 218 P. 913 (1923); *Van Kleeck v. Ramer,* 62 Colo. 4, 156 P. 1108 (1916). Only upon a showing of bad faith or fraud are legislative judgments reviewable. *McCray v. City of Boulder,* 165 Colo. 383, 439 P.2d 350 (1968); *McCormick v. City of Montrose,* 105 Colo. 493, 99 P.2d 969 (1939). The trial court made no finding of fraud or bad faith, but nevertheless the court found that the motive of the council was unlawful in attempting to complete the annexation before the November 4, 1980, election.

■ There was substantial evidence presented at the hearing before the city council on October 27, 1980, that an emergency existed and that the city should act quickly. The emergency clause included an elaborate, detailed explanation of why, in the judgment of the city council, immediate action should be taken. We hold that the fact that the ordinance was enacted as an emergency measure on October 27, 1980, does not invalidate it.[2] Because of our res-

of Denver, to the extent that such annexations are governed by other provisions of the constitution.

(3) The general assembly may provide by law for procedures necessary to implement this section. *This section shall take effect upon completion of the canvass of votes taken thereon.*

"As adopted by the People, November 4, 1980—Effective upon proclamation of the Governor, December 19, 1980." (Emphasis added.)

2. We are not unaware that the city by its action avoided a vote on the annexation and our cases have stressed the importance of the people's right of referendum. However, that right is not unlimited, and our constitution provides that those laws which are "necessary for the immediate preservation of the public peace, health or safety," are excepted from the power of referendum. *Colo. Const.* art. V, sec. 1. The enactment of this ordinance under the emergency power of the city council has effectively taken this matter out of the hands of the people, at least as to the initial annexation. The people are free at this point to initiate a meas-

olution of this matter, we need not reach the question whether the adoption of the annexation ordinance on second reading on November 11, 1980, was effective.

■ Slack argues that Amendment No. 3, approved in a statewide election on November 4, 1980, precluded the unilateral annexation. We do not agree. Since the constitutional amendment had not been voted on at the time of the October 27 adoption of the ordinance, the annexation did not violate the provision of Amendment No. 3, which was not retroactive in its effect. Amendment No. 3 did not become effective until the Governor's proclamation announcing the completion of the canvassing was made in December of 1980. *See supra* note 1; *Pugh v. City of Sacramento,* 119 Cal. App.3d 485, 174 Cal.Rptr. 119 (1981).

### II.

The appellee Slack contends that the district court erred in concluding that the petitions for annexation election in this case do not take precedence over the unilateral annexation proceeding.

At the time of the filing of the petitions, section 31–12–118, C.R.S.1973 (1977 Repl. Vol. 12), provided in relevant part as follows:

"**31–12–118. Priority of annexation proceedings.** (1) The purpose of this section is to give a first priority to annexation proceedings.

(2) When a governing body receives a petition for annexation pursuant to section 31–12–107(1) or a petition for an election on the question of annexation pursuant to section 31–12–107(2), no other proceedings shall be commenced or

prosecuted for the annexation or incorporation of the same area or any part thereof, and no other proceedings shall be commenced or prosecuted for the creation of any quasi-municipal corporation in the same area or any part thereof until the question of annexing such area pursuant to any such petition has been finally determined . . . ."

The appellee Slack argues that once the city council received the Petitions for Annexation Election, it was expressly prohibited from either commencing or prosecuting the unilateral annexation proceeding. Slack also argues that even if the petitions submitted were not in substantial compliance with section 31–12–107(2) of the Annexation Act because they divided city-owned land without the city's permission, substantial compliance with the Act is not required and section 31–12–118(2), C.R.S. 1973 (1977 Repl.Vol. 12) provides that all other proceedings for annexation should cease once petitions are filed.

■ We cannot agree with this interpretation of the statute. Once the petitions are received, the city council is on notice of the request for the annexation election. However, unless the petitions are found to be in compliance with the provisions of the Annexation Act, they do not trigger a cessation of all other annexation proceedings pursuant to section 31–12–118(2). Since the petitions were found to be defective in that they divided city land without the city's permission, they were ineffective. Section 31–12–105(1)(a), C.R.S.1973 (1977 Repl.Vol. 12).[3] The appellees' attempts to correct the deficiencies and modify the petitions could not succeed because once the petitions had been rejected as defective, it was not possi-

ure to revoke the annexation, if such a remedy would otherwise be available to the legislative body. *See McKee v. City of Louisville,* 616 P.2d 969 (Colo.1980); *VanKleek v. Ramer, supra.*

**3.** Section 31–12–105, C.R.S.1973 (1977 Repl. Vol. 12), provides in pertinent part:

"**31–12–105. Limitations.** (1) Notwithstanding any provisions of this part 1 to the contrary, the following limitations shall apply to all annexations:

(a) In establishing the boundaries of any territory to be annexed, no land held in identical ownership, whether consisting of one tract or parcel of real estate or two or more contiguous tracts or parcels of real estate, shall be divided into separate parts or parcels without the written consent of the landowners thereof unless such tracts or parcels are separated by a dedicated street, road, or other public way."

ble to revive them by subsequent amendment. In *Cesario, supra,* we held that the city council could not amend the description on its unilateral annexation ordinance after hearings on the ordinance had been concluded. Similarly, here, the amended petitions were without restorative effect since the description for the proposed annexation was changed *after* the petitions were circulated and signed. The subject area of the proposed annexation election could not be validly changed without newly signed petitions, with qualified signatures endorsing the changed description of the area proposed for annexation.[4]

Sections 31–12–118(1) and (2) establish the priority of annexation proceedings over incorporation proceedings. *In re Incorporation of Town of Eastridge v. City of Aurora,* 198 Colo. 440, 601 P.2d 1374 (1979). The statute, however, does not specifically address the issue whether the filing of a petition under section 31–12–107(1) or (2) necessarily takes precedence over a unilateral annexation proceeding under section 31–12–106. We do not deem it necessary to address this question in view of our holding that the amended petitions for an annexation election were without effect to cure the defective original petitions for an annexation election. Moreover, annexations occuring after the effective date of Amendment No. 3, *Colo. Const.* art. II, sec. 30, will be governed by the provisions of Amendment No. 3, and the statutes enacted implementing the amendment.

### III.

■ Slack next asserts that the trial court erred in concluding that the legal description of the area to be annexed by city ordinance was sufficient. He contends that the description could have misled several residents and landowners, because it failed to clearly establish a point of beginning.

The trial court found that the description was in substantial compliance with the requirements of the Annexation Act, and held that the description was therefore valid. *Board of County Commissioners of the County of Arapahoe v. City and County of Denver,* 170 Colo. 56, 459 P.2d 292 (1969) and *Board of County Commissioners v. City and County of Denver,* 193 Colo. 325, 566 P.2d 335 (1977).

The record of the October 27, 1980, hearing before the city council shows that the appellees raised their questions about the alleged ambiguity of the legal description. Testimony was received from the city's registered land surveyor, the city engineer, and a private consulting engineer and land surveyor who had been hired by the city to audit the legal description and percentage of contiguity. The consensus of the engineering testimony was that there was no problem identifying the point of beginning on the annexation map. *See People v. City of Park Ridge,* 86 Ill.App.2d 82, 230 N.E.2d 289 (1967). In fact the point of beginning designated by the city is the only point which allows complete enclosure of the annexation area in a way harmonious with then existing city boundaries. This is not the type of clear misdescription present in *Val d' Gore, Inc. v. Town Council of Town of Vail,* 193 Colo. 311, 566 P.2d 343 (1977).

The record amply supports the finding of the trial court that the description was not insufficient. We agree with the trial court that the legal description was in substantial compliance with the requirements of sections 31–12–108, 31–12–104, and 31–12–105, C.R.S.1973 (1977 Repl.Vol. 12), and was sufficient to withstand the appellees' challenge.

### IV.

■ Finally, Slack argues that the entire Municipal Annexation Act is unconstitutional as being vague. We do not agree. Although the careless draftsmanship

---

4. Of course, we are not unaware, as the trial court noted, that here the appellees sought an election on the annexation with the hope to effectively veto the council's unilateral annexa-tion. However, the form of the petitions must meet the statutory standards to be valid to statutorily interrupt the unilateral annexation process.

present in the Act has been previously noted, *see, e.g., Pomponio v. Westminster,* 178 Colo. 80, 496 P.2d 999 (1972); *Green Valley v. District Court,* 186 Colo. 173, 526 P.2d 141 (1974), we are here faced with the construction of section 31–12–118 only. The appellees did not fully comply with this section, since their petitions for annexation election were defective and invalid. Therefore, the appellees are not able to demonstrate that the Act as applied to them is impermissibly vague. Similarly, they have no standing to raise the question of vagueness as to the other sections of the Act which are not fairly raised by the facts of this case. Thus, we do not elect to consider the constitutionality of the Annexation Act of 1965. *Compare Board of County Commissioners of the County of Jefferson v. City and County of Denver,* 194 Colo. 252, 571 P.2d 1094 (1977); *Green Valley Ranch Venture v. District Court,* 186 Colo. 173, 526 P.2d 141 (1974). *Breternitz v. City of Arvada,* 174 Colo. 56, 482 P.2d 955 (1971).

We hold that the annexation ordinance enacted October 27, 1980, is valid. Accordingly, the judgment of the district court is reversed.