## No. 14,230.

### HUDSON ET AL. *v.* ANNEAR, AUDITOR.
(75 P. [2d] 587)

Decided January 10, 1938.

552

Mr. SAMUEL CHUTKOW, Mr. NOAH A. ATLER, Mr. WARWICK M. DOWNING, Mr. T. E. MUNSON of counsel, for plaintiffs in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. LUKE J. KAVANAUGH, Deputy, Mr. HENRY E. LUTZ, Mr. PIERPONT FULLER, JR., Mr. JOSEPH D. ISKOW, Assistants, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

A PROCEEDING in mandamus by Hudson and Plummer, against Annear, state auditor, to compel issuance of salary warrants for services rendered by them as employees of the state income tax department. The auditor had judgment.

At the general election of 1934, Hudson was chosen state senator for a term of four years, and at the general election of 1936, Plummer was elected as a representative for a term of two years. By virtue of their offices they served as members of the thirty-first (1937) session of the General Assembly. At that session an income tax law was enacted. Laws 1937, p. 677 (c. 84A, '37 Sup. '35 C. S. A.). By its terms the state treasurer was to administer the act, and to that end, by section 32, was given "power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations and * * * fix the compensation and prescribe the duties and powers of such * * * persons as may be necessary in the performance of his duty. The state treasurer may delegate to any person so appointed, such power and authority as he deems reasonable and proper for the administration of this act."

July 12, 1937, the state treasurer addressed identical letters to Hudson and Plummer, reading as follows: "Please be advised that you have been selected as division chief field deputy of the income tax department of the state treasurer's office. This employment is to begin July 15, 1937; salary $200.00 per month. * * * You will report to this office on Thursday morning, July 15, 1937." The appointees reported as directed, received instructions as to their duties, and proceeded in the discharge thereof. August 1, 1937, the state treasurer certified to the Civil Service Commission that the appointees had "complied" with their employment and were entitled to

compensation at the rate fixed by him for the last half of July, 1937, and based thereon the Civil Service Commission certified to the state auditor that said appointees were entitled to warrants for their salaries, for the payment of which money had been appropriated and was available. The state auditor declined to issue warrants, and in answer to an alternative writ, which his declination occasioned, he urged that since Hudson and Plummer were members of the General Assembly when the law under which they were appointed was passed, and were such members when appointed and during the time for which they claimed compensation in virtue of their appointment, their employment came within the inhibitions of the Constitution, and particularly of article III, and sections 6, 8 and 9 of article V thereof, which we set forth at this point.

### Article III.

"The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

### Article V.

Section 6. "Each member of the general assembly, until otherwise provided by law, shall receive as compensation for his services the sum of one thousand ($1000) dollars for each biennial period, payable at the rate of $7.00 per day during both the regular and special sessions, the remainder, if any, payable on the first day of the last month of each biennial period; together with all actual and necessary traveling expenses to be paid after the same have been incurred and audited, and the said members of the general assembly shall receive no other compensation, perquisite or allowance whatever. No general assembly shall fix its own compensation."

Section 8. "No senator or representative shall, during the time for which he shall have been elected, be appointed to any civil office under this state; and no member of congress, or other person holding any office (except of attorney-at-law, notary public, or in the militia) under the United States or this state, shall be a member of either house during his continuance in office."

Section 9. "No member of either house shall, during the term for which he may have been elected, receive any increase of salary or mileage, under any law passed during such term."

██ What the parties denominate the "main contention," is grounded in section 8, article V, of the Constitution, which says that legislators shall not be appointed to any "civil office." In the circumstances of the record, a preliminary inquiry is, Do the duties which have been, or, under the act of 1937, may be, assigned to Hudson and Plummer, cast them in the role of office-holders within the meaning of the Constitution, or are they only employees? That the distinction indicated by the query exists, and is of controlling importance, is well recognized. "Although an office is an 'an employment,' it does not follow that every employment is an office." Chief Justice Marshall, in *United States v. Maurice*, 2 Brock. 96, 26 Fed. Cas. 1211. "The officer is distinguished from the employee in the greater importance, dignity, and independence of his position; in being required to take an official oath, and perhaps to give an official bond; * * * and usually, though not necessarily, in the tenure of his position." Judge Cooley, in *People ex rel. v. Langdon,* 40 Mich. 673. "A position, the duties of which are undefined, and which can be changed at the will of the superior; * * * is not an office but a mere employment, and the incumbent is not an officer but a mere employee." 19 Am. & Eng. Enc. Law, pp. 387, 388. See, also, *State v. Spaulding,* 102 Iowa 639, 72 N. W. 288.

██ When we recall that in the service they were to give pursuant to their appointment, the legislators here

were not required to take an official oath, or to give bond, or to do other than to proceed with the discharge of duties assigned from time to time by the state treasurer, or by another appointee of that official, who was designated as their superior, we cannot think their positions comport with the conception of a civil office. Rather, as seems clear, their service is in subordination of the state treasurer, who, in the exercise of the general sovereignty inherent in the executive office which he holds, and by special provision of the act under which he proceeded, shares his authority with none. In short, Hudson and Plummer are employees of the state treasurer, and have not been, nor under the law by virtue of which the state treasurer is acting, could they be, clothed with power incidental to a civil office.

In *State ex rel. v. Hawkins,* 79 Mont. 506, 257 Pac. 411, a member of the legislature, by appointment of the board of railroad commissioners, was holding a position designated as auditor for the board, at a salary, fixed by the board, of $225 per month. His right to the salary was challenged on the theory that the legislator's appointment was violative of sections of the Montana Constitution identical with article III, and section 8, article V, of our Constitution. In an opinion which exhaustively reviews the authorities, the Montana court held that the appointment was not in contravention of the section of that state's Constitution which is like our section 8, article V, because, "he has, in himself, by virtue of his appointment, no powers properly belonging to the judicial or executive department of the state government, for he is wholly subject to the power of the board, and, having no powers, he can exercise none; and therefore his appointment was not violative of article 4 [our article III] of the Constitution." The Montana court also said: "Counsel * * * urges we should extend the language of the Constitution so as to include in the inhibition employment of members of the Legislature, as well as appointment to civil office; but we may not extend

the language of the Constitution. That is beyond our legitimate power." For a somewhat different expression of the same principle, see *Walker v. Bedford,* 93 Colo. 400, 408, 26 P. (2d) 1051, 1054. In *State ex rel. v. Cole,* 38 Nev. 215, 148 Pac. 551, the Nevada Supreme Court, addressing itself to a like situation and considering similar constitutional provisions, after reviewing the authorities at length, concluded, as did the Montana court; and speaking through Mr. Justice Coleman, said: "None of the sovereign power of the state" had been "intrusted" to the legislator enjoying the employment. The case of *Stockman v. Leddy,* 55 Colo. 24, 129 Pac. 220, presented a situation where the legislative department had attempted to confer executive power upon a collection of its members, and authorized the expenditure of public funds on the order of such members. We had no hesitancy in announcing that what was undertaken by the legislature was violative of article III of the Constitution. But the distinction arising here was foreseen by Mr. Chief Justice Campbell, author of the opinion there, for he said: "The general assembly might well have authorized the attorney general to expend this money." *Mulnix v. Elliott,* 62 Colo. 46, 156 Pac. 216, supplies another example of the rule.

It is not our function to determine as to the desirability of the employment of legislators in the circumstances here. A constitutional executive official, empowered by an unchallenged legislative enactment to "employ" others to assist him in certain administrative duties, has engaged plaintiffs in error; and the civil service board, another constitutional body, has sanctioned his action. To determine what is constitutional is not committed exclusively to the judicial department. The views of officials of co-ordinate branches of the government are entitled to consideration. Therefore, since no inherent disqualification for the preferment attends the appointees, and others professing superior legal rights thereto are not complaining, why should the judi-

cial department intrude into a situation which concerns only the other two departments, particularly, as here, where they are not in disagreement? Article III of the Constitution applies not less to the judicial department than to the other departments. It is well, of course, that all departments give pause, that they may not offend. All must answer to the people, in and from whom, as specifically set forth in the Constitution, all political power is invested and derived. Art. II, §1. If our people desire that legislators shall not be employed by the executive department, the people of California have shown the way. Originally, their Constitution inhibited the appointment of assemblymen to "any civil office of profit." By amendment the proscription was broadened to "any office, trust, or employment." See *Chenoweth v. Chambers,* 33 Cal. App. 104, 164 Pac. 428.

Not pausing for greater detail of exposition of our views, we conclude that notwithstanding their membership in the legislative department, Hudson and Plummer are not disqualified for the employment to which they were assigned by the state treasurer. It follows that the alternative writ of mandamus should have been made peremptory. To that end, let the judgment be reversed.

MR. CHIEF JUSTICE BURKE dissents.