**No. 27407**

**Glenn K. Billings, Ruth Fountain, Arthur Gomez, James E. Mills, Glenn Swinson, Harry C. Tinsley and William Van Buskirk v. Mary Estill Buchanan, as Secretary of State of the State of Colorado and Stop Tax Increases Committee, Thomas J. Morroni, Kenneth W. Bemis, Jr., and James W. Brennan, Jr.**

(555 P.2d 176)

Decided October 20, 1976.

Alperstein, Plaut and Busch, P.C., David J. Hahn, for plaintiffs-appellees.

Morrato, Gueck & Colantuno, P.C., Richard J. Wise, for intervenors-defendants and appellants.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

The appellees (protestors) filed with the Secretary of State a protest to a petition to place a proposed constitutional amendment[1] on the November 2, 1976 general election ballot.

The protest and the hearing conducted thereon by the Secretary of State was in accordance with the provisions of section 1-40-109, C.R.S. 1973. After a hearing, detailed findings of fact were made by the Secretary of State, who denied the protest. The protestors then filed a complaint in the trial court seeking a judgment that the petition was insufficient and that the proposed constitutional amendment be ordered off the ballot. The appellants, who were the proponents of the petition, were permitted by the trial court to intervene as co-defendants with the Secretary of State.

---

[1] The proposed amendment would add a new section 21 to Article X of the Constitution of the State of Colorado, requiring registered elector approval of all state and local executive or legislative acts which would result in new or increased taxes. The proposed amendment is tentatively identified as Ballot Question No. 10 on the forthcoming general election ballot.

On stipulated facts, the trial court entered a judgment granting to the protestors the relief sought, and the proponents immediately appealed to this court. The trial court stayed its judgment removing the proposed ballot question from the ballot pending this appeal. We reverse the judgment of the trial court.

■ The sole issue here emanates from the procedure the proponents utilized in cutting apart and reattaching as separate sheets affidavit and signature forms pertaining to 8,347 signatures of the 63,990 signatures submitted in support of their petition to place this proposed constitutional amendment on the ballot. 60,040 signatures were required by law to place the proposal on the ballot.

The following facts relevant to the questioned 8,347 signatures are disclosed by the stipulation of facts submitted to the trial court. These signatures were obtained as a result of a full page advertisement in a Denver daily newspaper. Qualified electors were invited to circulate and sign the petition forms printed on the newspaper page in three parts. These parts consisted of (1) the warning and description of proposed amendment, (2) the instructions and affidavit of the circulator, and (3) warnings to proposed signers and 25 lines for the signatures and residence addresses of the qualified electors. These three parts substantially conformed to the requirements of sections 1-40-106 and 107, C.R.S. 1973.

The entire page was delivered to the office of the proponents by those who utilized the newspaper petition forms in securing signatures. The following is quoted from the stipulation of facts before the trial court:

"(3) The newspaper pages were then cut into three separate parts, which parts were then pasted and reassembled into the approximate form in which they now appear from those several petition sections which are here before your Honor."

It was further stipulated that the cutting and reassembling process was conducted after the affidavits had been sworn to by the circulators who were not present during the cutting and reassembling process.

The main thrust of the protest before the Secretary of State and before the trial court by the protestors is that the proponents unlawfully cut the newspaper page into the three portions of the petition and then reassembled and bound them together for inclusion in the petition presented to the Secretary of State. The protestors maintain that this invalidated these signatures thus rendering the proponents' petition insufficient as not supported by the required number of valid signatures.

The trial court ruled that the sections of the petition made up from the newspaper petition forms were invalid as a matter of law under the authority of *Elkins v. Milliken*, 80 Colo. 135, 249 P. 655 (1926). The trial court thereupon ordered that the Secretary of State be prohibited from including this constitutional amendment on the Ballot. In rendering this judgment the trial court took the position that *Elkins* mandated a finding

of invalidity of all of the questioned petition signatures. We do not agree that *Elkins* is dispositive under the circumstances here.

In *Elkins* several sections of the petition were taken apart, and the separated pages were lengthened by pasting paper on the end of each. This was done "so as to meet the statutory requirement of size. . . ." It was also shown that the proponents in *Elkins* "altered, completed or entered many residences of the signers and the dates of signing thereon, reassembled the parts and furnished them to the secretary of state as a valid petition." Premised on these facts the *Elkins* case held that "the separation and alteration of the sections of the petition destroyed the integrity of each one so separated and rendered it worthless. . . ."

The facts of the instant case as revealed from the findings of the Secretary of State and as stipulated to before the trial court do not reveal any alteration or additions of dates or residences of the signers nor any indication of fraud. Both the Secretary of State in her findings and the trial court in its findings stated, in effect, that there was no showing or intimation that the separation of the forms involved any alteration, irregularity, or fraud. Consequently, the rule of that case did not authorize the trial court here to hold as a matter of law that the signatures and petition sections involved were invalid.

It is suggested by the protestors that there is much efficacy in extending the *Elkins* rule to the facts of this case. We reject this suggestion for a number of reasons.

 From our analysis of the matter, such a strict, prohibitive, and harsh rule as applied by the trial court here would undoubtedly have the effect of stifling the right of initiative and referendum which is guaranteed to the people by Section 1, Article V of our constitution. This constitutional provision, as well as the statutes which implement it, must be liberally construed so as not to unduly limit or curtail the exercise of the initiative and referendum rights constitutionally reserved to the people. This is well expressed in *Colorado Project-Common Cause v. Anderson*, 178 Colo. 1, 495 P.2d 220 (1972), where this court commented:
"[W]e point out again that the initiative provisions of the constitution must not be narrowly construed, but rather that they must be liberally construed to effectuate their purpose and to facilitate the exercise by electors of this most important right reserved to them by the constitution. *Yenter v. Baker*, 126 Colo. 232, 248 P.2d 311; *Baker v. Bosworth*, 122 Colo. 356, 222 P.2d 416; *see Burks v. City of Lafayette*, 142 Colo. 61, 349 P.2d 692."

Also in rejecting the suggestion for a stringent rule we note that the *Elkins* ruling, and the trial court ruling here appealed from was designed to provide a safeguard against fraud in the initiative and referendum procedures. The strict and prohibitive rule imposed by the trial court might well have been justified at the time the *Elkins* case was decided in 1926,

because the statutory law at that time was inadequate to provide an effective inquiry into the possibility of fraud. Since 1926, however, our legislature has adopted many statutes designed to guard against fraud and other abuses in the initiative and referendum procedures. All of the current provisions of law governing the initiative and referendum procedures are found in sections 1-40-101 *et seq.*, C.R.S. 1973 and as amended. *See* 1975 Cum. Supp. to Volume 1, C.R.S. 1973.

Among many other provisions, the current laws involving initiative and referendum procedures provide a protest procedure whereby the Secretary of State must not only conduct a hearing on a protest but now has the authority to issue subpoenas to compel the attendance of witnesses and the production of documents, and to seek, where necessary, a district court order to compel the attendance of witnesses and the production of necessary documentary or other physical evidence. The authority presently in the Secretary of State and the provisions for judicial review were designed by the legislature to be a safeguard against fraud and other abuses and to ferret out such fraud or abuses when brought to the attention of the Secretary of State by a protest or other means.

The appellees, in their brief, urge for the first time that this court consider, as a matter of expediency and urgency, a constitutional challenge to the proposed measure involved here. (Ballot question No. 10 on the November 2, 1976 General Election Ballot.) Appellees allege that this proposal is repugnant to the Constitution of the United States (Section 4, Article IV) which guarantees to every state a republican form of government.

It is a general rule, which we reaffirm here, that courts should not take jurisdiction to pass upon the constitutionality of a proposed law prior to its enactment or adoption. Our own constitution recognizes this rule by restricting cases in which this court may render advisory opinions to interrogatories submitted by the general assembly or by the governor. *Colo. Const.* Art. IV, Sec. 3. *C.F.&I. Steel Corporation v. Buchanan*, Supreme Court Nos. C-1071 and 27392 (consolidated), 191 Colo. 570, 554 P.2d 1354, announced September 30, 1976. Hence this opinion should not be interpreted as an expression of the constitutionality of this measure. If this proposal is adopted, undoubtedly the constitutional challenge will be before us for decision shortly after election.

For the reasons set forth herein we reverse the judgment of the trial court and reinstate the decision of the Secretary of State.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.