## No. 27219

**The Board of County Commissioners, of the County of Jefferson, State of Colorado, a body politic and corporate v. The City and County of Denver, State of Colorado, a municipal corporation; The City Council of the City and County of Denver, State of Colorado; The Board of County Commissioners of the City and County of Denver, State of Colorado; and William Grant, Surviving Executor of the Estate of Gertrude H. Grant, Deceased**

(565 P.2d 212)

Decided May 16, 1977. Rehearing denied June 13, 1977.

212

Patrick R. Mahan, County Attorney, Richard J. Scheurer, Assistant, George J. Robinson, Special Counsel, for petitioner.

Max P. Zall, City Attorney, Herman J. Atencio, Assistant, David J. Hahn, Special Counsel, for respondents.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

This case involves annexation of unincorporated Jefferson County land to the City and County of Denver. Jefferson County filed a district court action seeking a declaratory judgment and review, under Rule 106, of the annexation's validity. The court, finding several deficiencies in the procedure followed, voided the annexation. We reverse.

On August 13, 1973, by city ordinance, Denver annexed 441 acres of the 2,429 acre "Grant Farm." This was the first stage in a planned two-step annexation which eventually was to annex the entire farm to Denver. Nearly two months prior to enactment of the annexation ordinance, the Denver Board of Education, by resolution, had approved the annexation of the entire 2,429 acre farm.

The annexation petition was signed by William Grant and included an allegation that he was the sole owner of the affected land. Neither a hearing nor an annexation election was held prior to approval of the annexation ordinance.

## I. SCHOOL BOARD APPROVAL

The trial court ruled that the Denver School Board, by approving addition of the entire 2,429 acre "Grant Farm" to its school district, did not effectively approve annexation of the 441 acre first stage. Denver claims this ruling constituted error. We agree.

In 1967 the Municipal Annexation Act of 1965[1] was amended to prohibit annexation petitions and elections which would result in detaching territory from one school district and attaching it to another school district "unless accompanied by a resolution of the board of directors of the school district to which such territory will be attached, approving such annex-

---

[1] 1965 Perm. Supp., C.R.S. 1963, 139-21-1 *et seq.*

ation." 1967 Perm. Supp., C.R.S. 1963, 139-21-4(5).[2] It seems obvious that in enacting this addition, the General Assembly intended to empower school boards to protect themselves against having involuntarily to undertake responsibility for providing educational services in newly annexed areas. Here the school board's consent to the 2,429 acre annexation includes a consent to the 441 acre annexation. In substance the school board consented to the first stage of the annexation by having consented to the entire two-stage transaction.[3]

## II. ALLEGED PETITION DEFICIENCIES

Jefferson County contends that the annexation is invalid because of a series of alleged defects in the procedures followed. We hold that, while the procedures followed are not to be recommended, none of the procedural errors is fatal to the annexation.

First, Jefferson County claims that no "landowner" signed the annexation petition. The statute provides that if the "owners of one hundred per cent of the property proposed to be annexed, exclusive of streets and alleys . . ." sign the annexation petition, the land may be annexed by ordinance without the notice, hearing or election otherwise required. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(h). William Grant, who signed the petition, was the sole surviving executor of the estate of Gertrude H. Grant. Her estate included all of the 441 acres to be annexed. Jefferson County argues that William Grant was not the "landowner" because title to the land was not in him but in the devisees of Gertrude H. Grant's will, and the devisees did not sign the petition. We hold that the trial court properly concluded that William Grant was the "landowner" for purposes of this statute.

It is true that upon the death of the owner, the title to real estate descends to his devisees and not to his personal representatives. *Fastenau v. Engel*, 129 Colo. 440, 270 P.2d 1019 (1954). It is also true that the Municipal Annexation Act of 1965 speaks of landowners as owners in fee. 1965 Perm. Supp., C.R.S. 1963, 139-21-21(8).[4] At the time of this annexation, however, no devisees could have been identified, for the will empowered the surviving executor to distribute all the property to any of three trusts and no such distribution had yet been made.

Gertrude H. Grant's will, however, gave the executors or the surviving executor the full power to manage and sell estate property as well as authority to do any act and carry out any agreement respecting the property, as if the executor were the individual owners. This grant of power evinces the testatrix's intention that the surviving executor be authorized

---

[2]C.R.S. 1963, as amended was in effect at the time of this annexation. The citation for this section is now Colo. Sess. Laws 1975, ch. 275, 31-12-105(1)(d) at 1079.

[3]It was argued here that school district approval was not required because the statute providing for the approval amounts to constitutionally prohibited special legislation. Since school district approval was given, however, we need not reach that issue.

[4]Now Colo. Sess. Laws 1975, ch. 275, 31-12-103(6) at 1077.

to deal with estate assets as, in his opinion, was in the best interest of the estate. This power included the power to petition for annexation to Denver. *See Aspen v. Howell*, 170 Colo. 82, 459 P.2d 764 (1969) (Municipal Annexation Act of 1965 should be liberally construed); *Hinson v. Smyer*, 246 Ala. 644, 21 So.2d 825 (1945) (executor given power to convey is the repository of legal title). Were we to hold otherwise, land held in decedents' estates under the circumstances here presented could not participate in annexations.

■ Second, Jefferson County asserts that this annexation is defective because no notice was given, no hearing or election was held, and no court approval was obtained. Because we have determined that the petition was signed by the landowner of one hundred percent of the territory annexed, no notice, hearing, or election is required. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(h).[5] Nor is court approval necessary. 1965 Perm. Supp., C.R.S. 1963, 139-21-19(1).[6]

■ Third, we reject the contention that Denver imposed additional terms and conditions upon the area annexed which would require that an election be held pursuant to 1965 Perm. Supp., C.R.S. 1963, 139-21-11(1)(c).[7] The landowner agreed to donate a parcel of land with certain improvements to the school district. This was not, however, an "additional term or condition" imposed "upon the area"; it was a personal obligation undertaken by the landowner in favor of the school district.[8] This relatively standard practice under which a landowner donates land to a school district does not trigger the requirement of an election. In the plain words of the statute, no term or condition is thereby imposed upon the area to be annexed.

Further, no terms, conditions or limitations were placed on the annexation by the ordinance. It unconditionally approved the annexation. Denver Ordinance No. 518, Series 1973. *See Board of County Comm'rs v. City and County of Denver*, 38 Colo. App. 171, 556 P.2d 486 (1976). No election was required by 1965 Perm. Supp., C.R.S. 1963, 139-21-11(1)(c).

■ Fourth, Jefferson County asserts that no evidence affirmatively shows that a map of the 441 acre parcel to be annexed was in existence when the annexation ordinance was passed. The statute requires that the petition be accompanied by four copies of an annexation map. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(e)(i).[9] The county apparently concedes, however, that if such a map had been available to the City Council, this would have constituted substantial compliance with the statute. The map

---

[5]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(g) at 1081.
[6]Now Colo. Sess. Laws 1975, ch. 275, 31-12-120(1) at 1091.
[7]Now Colo. Sess. Laws 1975, ch. 275, 31-12-112(1) at 1084.
[8]We do not imply that the landowner's personal obligation is valid and binding; that issue is not before us.
[9]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(d) at 1080.

of the 441 acres, part of the record in this case, is not marked with a date showing when it was filed with the City Council. Our own search of the record, however, discloses that an excerpt of proceedings before the Denver City Council on August 7, 1973, includes a discussion of the shape of the 441 acre tract to be annexed and references to a map depicting it. Thus, the required map apparently was available to the City Council prior to and at the time the annexation ordinance was enacted. We hold that there was substantial compliance with the statutory requirement that a map accompany the petition. *See Board of County Comm'rs v. City and County of Denver*, 38 Colo. App. 171, 556 P.2d 486 (1976).

Finally, Jefferson County argues that the land to be annexed fails to meet the statutory contiguity requirements. The statute requires that at least one sixth of the perimeter of the area to be annexed be contiguous with the annexing municipality. 1965 Perm. Supp., C.R.S. 1963, 139-21-3(2).[10] Jefferson County argues, however, that contiguity can be achieved here only by the use of an "umbilical cord" tract of land, and therefore contiguity cannot be found to exist.

This annexation did not employ an "umbilical cord" to achieve contiguity. The narrow strip which Jefferson County seeks to characterize as an "umbilical cord" constitutes all the land between the City's boundary and a large lake. The strip of land bordering the lake is part of the "Grant Farm," and its shape is long and narrow by necessity.[11]

## III. ALLEGED ORDINANCE DEFICIENCIES

■ Jefferson County alleges that the present annexation does not fully comply with Denver's annexation policies. We agree with the court of appeals' resolution of this issue in *Board of County Comm'rs v. City and County of Denver*, 38 Colo. App. 171, 556 P.2d 486, 488 (1976). There, Judge Ruland, in a unanimous opinion, stated:

". . . a city may determine its annexation policy with reference to each annexation and may repeal, by implication, any prior ordinances relative to such annexation policies inconsistent therewith. *See Aurora v. Andrew Land Co.*, 176 Colo. 246, 490 P.2d 67 (1971)."

Secondly, Jefferson County urges that Denver's annexation ordinance is void because its "emergency clause" was not supported by the facts. The clause provides:

". . . the Council finds this Ordinance is necessary for the immediate preservation of the public health and public safety, and determines that it shall take effect immediately upon final passage and publication."

---

[10]Now Colo. Sess. Laws 1975, ch. 275, 31-12-104(1)(a) at 1078.
[11]The facts of this case make it unnecessary to decide whether purposeful use of an "umbilical cord" strip of land solely to achieve contiguity is permissible.

Jefferson County has cited no provision of the Denver Charter which limits or directs the exercise of the Council's power to declare an ordinance to be an emergency measure.[12] Nothing has been presented here to indicate that this determination should not be left solely to the City Council. *See Van Kleeck v. Ramer*, 62 Colo. 4, 156 P. 1108 (1916).

Thirdly, Jefferson County argues that the findings of the Denver City Council are not adequately supported. Our review of the record reveals an adequate basis for the City Council's findings of compliance with the Municipal Annexation Act of 1965.

## IV. ANNEXATION OF UNINCORPORATED LAND

 Finally, Jefferson County argues that Denver cannot annex an area that is not part of an incorporated city or town. It reaches this position by arguing that since the state constitution requires that Denver have only one school district, only territory annexed from contiguous municipalities can be added to the Denver school district. This is a non-sequitur. Article XX, Section 7 of the Colorado Constitution indeed provides that the City and County of Denver shall comprise a single school district to be known as "District No. 1." The Constitution further provides that:

"Upon the annexation of any contiguous *municipality* which shall include a school district or districts or any part of a district, said school district or districts or part shall be merged in said ' District No. 1, ' which shall then own all the property thereof, real and personal, located within the boundaries of such annexed *municipality*, and shall assume and pay all the bonds, obligations and indebtedness of each of the said included school districts, and a proper proportion of those of partially included districts." *Id.* (Emphasis supplied.)

While the choice of the word "municipality" by the draftspersons of this 1902 amendment may not seem artful seventy-five years later, we decline to give it the effect suggested by Jefferson County. This portion of the state constitution does not define what territory, whether incorporated or not incorporated, is subject to annexation. Its purpose is merely to require that assets and liabilities of school districts lying partly or wholly within annexed territory be consolidated into the constitutionally created single Denver school district. The Constitutional language evinces no intent to restrict Denver annexations to land within other incorporated municipalities.

The judgment is reversed and the cause is remanded with directions to enter a decree holding the annexation valid.

MR. JUSTICE HODGES and MR. JUSTICE LEE specially concur.

---

[12]Article II, Section C 2.2 of the Charter of the City and County of Denver states that an ordinance takes effect thirty days after passage and publication unless it is declared to be an emergency ordinance.

MR. JUSTICE GROVES does not participate.

MR. JUSTICE LEE specially concurring:

On the facts of this case, I concur in the result reached by the court. However, I wish to strongly endorse the majority's comment that "the procedures followed are not to be recommended." Article XX, Section 1 of the Colorado Constitution provides that the general annexation statutes apply with full force to respondent City and County of Denver. Adherence to the procedural requirements of the annexation statutes would eliminate many unnecessary controversies and obviate the need for repeated judicial review.

I am authorized to state that MR. JUSTICE HODGES joins me in this special concurrence.