**No. 79SA435**

**Don McKee, Sally Collins, John Leary, Jeannine Malmsbury and James A. Cederberg, individually and as the representatives of Qualified Electors of the City of Louisville, Colorado v. The City of Louisville, a Colorado municipal corporation, Howard Berry, Lawrence Caranci, Anthony Del Pizzo, Eugene Di Carlo, Robert Kelker and Norbert Meier, as Members of the City Council of the City of Louisville, Colorado, and John Waschak, as Mayor and Hanover Development Company, Zenith Builders, Inc., a Colorado corporation, WJS Corporation, a Colorado corporation, and William & Associates, a Colorado corporation**

(616 P.2d 969)

Decided September 8, 1980.

Caplan and Earnest, Gerald A. Caplan, Richard E. Bump, for plaintiffs-appellants.

Rautenstraus & Joss, Curt D. Rautenstraus, W. Bruce Joss; Musick, Williamson, Schwartz, Leavenworth & Cope, P.C., Stephen T. Williamson, for defendants-appellees and special counsel to the City of Louisville.

French & Stone, Joseph C. French, Robert W. Stone for intervenor-appellee, Hanover Development Company.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

This appeal questions the extent to which the legislative body of a municipality, by adopting an annexation ordinance as an emergency measure, can thereby curtail the initiative and referendum powers reserved to the people by Article V, Section 1, of the Colorado Constitution.

The plaintiffs-appellants, Don McKee and four other qualified electors (electors), commenced this action individually and as representatives of all qualified electors of the City of Louisville against the members of the city council, the Louisville mayor, and the City of Louisville. The complaint alleged that the electors' constitutional rights to referendum and

initiative were abridged by the failure of the named Louisville city officials to refer an annexation ordinance, ordinance 637, to the voters of Louisville, and by their failure to submit to the vote of the electorate an initiated measure repealing ordinance 637. After a trial on the merits, the district court ruled that the electors had no right to either a referendum or initiative election and dismissed the complaint with prejudice. We reverse the judgment of dismissal and remand the cause with directions.

I.

On December 13, 1978, Hanover Development company, Zenith Builders, Inc., WJS Corporation and William and Associates (property owners) filed a petition with the City of Louisville for annexation of certain land they had assembled. The land consisted of 1,407 acres which they intended to develop as both residential property and a regional commercial center known as Centennial Valley Mall. A public hearing on the proposed annexation was held on February 13, 1979. One week later, on February 20, 1979, the Louisville City Council introduced and unanimously approved on first reading ordinance 637, which purported to annex the property in question. The ordinance contained an emergency or safety clause rendering it effective upon its adoption as necessary for the public health, safety and welfare. No mention of the emergency clause was made at the February 20 meeting and the ordinance was read by title only. At this meeting the electors orally requested the city council to refer the ordinance to a vote of the qualified electors of the city. This request was summarily denied and a public hearing on the ordinance was scheduled for 30 days later, March 20, 1979. The electors then filed duly signed petitions for a referendum with the city clerk. The city council refused to refer the ordinance to a vote of the electorate.

At the public hearing on March 20, 1979, the electors asked the city council what they were required to do in order to place the ordinance before the electorate. The received no response. At the March 20 meeting the city council unanimously adopted ordinance 637.[1]

Upon adoption of the ordinance the electors immediately refiled the referendum petition with the city clerk. On the following day, March 21, 1979, the electors at 8:15 a.m. also filed with the city clerk initiative petitions duly executed by a sufficient number of qualified electors. The initiative petitions proposed a measure to repeal ordinance 637. The city officials of Louisville refused to submit the initiated measure to the electorate.

The electors, on March 21, 1979, filed an action in the district court requesting the court to suspend the effect of ordinance 637 and to order a referendum election, or alternatively, to order the Louisville city officials

---

[1] The city council on March 20, 1979, also adopted ordinance 638, which zoned by section the property annexed by ordinance 637 for residential, commercial and agricultural uses.

to publish the initiated measure and to submit it to a popular election. On motion of the property owners, the district court permitted them to intervene because of their interest in the matter.[2] After a trial on the merits the court held that the electors had no right to a referendum on the annexation ordinance because the inclusion of the emergency clause exempted it from the referendum provision of the Colorado Constitution. *Colo. Const.* Art. V, Sec. 1. The court also held that the electors had no constitutional right to an election on the initiated measure because, under the Municipal Annexation Act of 1965 (Municipal Annexation Act), sections 31-12-101 *et seq.,* 31-12-501, 31-12-601, C.R.S. 1973 (1977 Repl. Vol. 12), neither the city council nor the electorate have the power to disconnect annexed land without the consent of the property owners.

On this appeal the electors claim that Article V, Section 1 of the Colorado Constitution entitles them to a referendum election on ordinance 637 despite the inclusion of an emergency clause in the ordinance,[3] or at least to an initiative election on the proposed repeal measure. We find it unnecessary to address the electors' claim regarding a referendum election, as the electors were clearly deprived of their constitutional right to initiative.

## II.

"All political power is vested in and derived from the people," and all government originates from the people. *Colo. Const.* Art. II, Sec. 1; *Colorado Project-Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972); *Hudson v. Annear,* 101 Colo. 551, 75 P.2d 587 (1938). By the express provisions of the Colorado Constitution the people have reserved for themselves the right to legislate. *Colo. Const.* Art. V, Sec. 1. This right is of the first order; it is not a grant to the people but a reservation by them for themselves. *E.g., In re Legislative Reapportionment,* 150 Colo. 380, 374 P.2d 66 (1962). The right of initiative pertains to *any measure,* whether constitutional or legislative, and, in the case of municipalities, it encompasses legislation of every character:

"The initiative . . . powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality as to all local, special municipal legislation of every character in or for their respective municipalities." *Colo. Const.* Art. V, Sec. 1.[4]

---

[2] The electors on this appeal have challenged the order of the district court permitting the property owners to intervene under C.R.C.P. 24. In view of our disposition of the case we find it unnecessary to address this issue.

[3] *Colo. Const.* Art. V, Sec. 1, excepts from the referendum provisions laws necessary for the immediate preservation of the public peace, health or safety.

[4] Section 1-40-116, C.R.S. 1973, provides for the submission by qualified voters to the legislative body of a municipality *any* proposed ordinance, charter, or charter amendment, and also contains procedures for an election on the proposed measure. Louisville Municipal Code, § 1.16.020, states that *any* proposed ordinance may be submitted to the city council upon petition of qualified electors in the manner provided by the state law.

Like the right to vote, the power of initiative is a fundamental right at the very core of our republican form of government. *E. g., Bernzen v. City of Boulder,* 186 Colo. 81, 525 P.2d 416 (1974); *Brownlow v. Wunsch,* 103 Colo. 120, 83 P.2d 775 (1938).

This court has always liberally construed this fundamental right, and, concomitantly, we have viewed with the closest scrutiny and governmental action that has the effect of curtailing its free exercise. *E.g. Billings v. Buchanan,* 192 Colo. 32, 555 P.2d 176 (1976). *Colorado Project-Common Cause v. Anderson, supra; Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692 (1960); *Yenter v. Baker,* 126 Colo. 232, 248 P.2d 311 (1952); *Baker v. Bosworth,* 122 Colo. 356, 222 P.2d 416 (1950). Especially in cases where, as here, the power of referendum is ostensibly unavailable to the people through the constitutional exemption of an emergency clause, nothing short of jealous judicial protection of the one remaining power of the electorate is in order. We expressly recognized this responsibility in *Van Kleeck v. Ramer,* 62 Colo. 4, 156 P. 1108 (1916):

"Under the reserved power of the initiative and referendum, after the declaration by the General Assembly that a law is necessary for the immediate preservation of the public peace, health or safety, when not referred to the people for their judgment, it still remains with them if they are dissatisfied with it, to cause a measure to be submitted at the next general election for its repeal." 62 Colo. at 13, 156 P. at 1111.

Governmental officials have no power to prohibit the exercise of the initiative by prematurely passing upon the substantive merits of the initiated measure. *City of Rocky Ford v. Brown,* 133 Colo. 262, 293 P.2d 974 (1956). Nor may the courts interfere with the exercise of this right by declaring unconstitutional or invalid a proposed measure before the process has run its course and the measure is actually adopted. *City of Rocky Ford v. Brown, supra; Speer v. People,* 52 Colo. 325, 122 P. 768 (1912). Then and only then, when actual litigants whose rights are affected are before it, may the court determine the validity of the legislation. *City of Rocky Ford v. Brown, supra; Speer v. People, supra.*

The trial court's dismissal of the electors' complaint in this case is flawed in two respects. First, the court determined that the interest of the intervening property owners in the annexed property permitted it to rule upon the validity of the initiated measure before its adoption. And second, the court based its dismissal upon a premature judicial determination that the initiated measure, if approved, would be invalid as beyond the legislative power of the city council and, accordingly, beyond the initiative power of the electorate.

### III.

In rejecting the electors' claim for a judicially ordered initiative election, the trial court ruled that the interests of the intervening property owners would be adversely affected by the initiated measure and, therefore, the court could properly determine the validity of that measure in advance of its adoption. In so ruling the court rendered an advisory opinion on a measure not yet affecting the intervenors' property interests and preempted the initiative process itself.

The initiated measure proposed by the electors is clothed in the first instance with a presumption of validity, and its actual validity may be considered by the court only if and when it is adopted into law by the electorate. *Rocky Ford v. Brown, supra.* In *Speer v. People, supra,* at 342-45, 122 P. at 773-774, which dealt with an initiative election on an amendment to the Denver City Charter, this court clearly articulated the operative principles in these matters:

"'The courts have no power to interrupt the process of amendment before it is complete, to restrain a popular vote upon a constitutional proposal, even though they may be clearly of the opinion that the popular vote will be ineffective because of defects already apparent in the method of proposal. They must wait until the amending process is fully completed, and then pass upon the validity of the amendment if this question is properly presented in litigation before them. In accordance with this view it would seem that the courts should compel by mandamus administrative acts incident to the amending process . . . .'"

. . .

"Future possibilities, that a measure may be invalid . . ., count for nothing in the presence of the overwhelming necessity of obeying the plain mandates of the constitution, and of keeping inviolate the distribution of powers as made until the people themselves, in their sovereign power, see fit to make a change . . . . Not until the measure is adopted and made a part of the charter have the courts any power to determine its validity and then only when actual litigants, whose rights are affected, are before them."

The interests claimed by the intervening property owners in this case consist of the receipt of various municipal services, such as water services and police and fire protection, and other benefits incidental to the zoning of the annexed property. Assuming that such interests might be legally implicated and adversely affected by the initiated repeal of the annexation ordinance — and we intimate nothing in regard to the validity of that claim or the propriety of relief in that instance — those interests do not override the legitimate and fundamental right of the electorate to seek the only available redress for municipal legislation which to them may seem unreasonable, burdensome or outrightly offensive.

If the repealing measure is not adopted at the initiative election, the claimed interests of the property owners will not have been affected in any manner, and the electors will have received their constitutional entitlement under the initiative clause. If, on the other hand, the repealing measure receives a majority of the votes cast at the election, section 1-40-113, C.R.S. 1973, the fundamental right of the electors will have been preserved and the property owners may then, if they so desire, resort to the judicial process on their claimed abridgement of interest.[5]

▄ Prior to an actual election on the initiated measure, neither due process of law nor any other constitutional principle serves to elevate the claimed interest of the intervening property owners to a constitutional absolute. At this stage of the proceedings those interests are entitled to no more process than that which an initiative election affords them, and the qualified electors of Louisville are entitled to no less under the Colorado Constitution. *See Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S. Ct. 2358, 49 L. Ed. 2d 132 (1976).

## IV.

In dismissing the electors' complaint with prejudice the trial court determined that "the Louisville City Council has no authority to pass an ordinance disconnecting annexed property from the City without the property owner's consent," and "[s]ince the Louisville City Council cannot disconnect the intervenors' property from the City without their consent, neither can the voters achieve that by initiative." By so ruling, the trial court assumed that when the electors filed the initiative petitions with the city clerk at 8:15 a.m. on March 21, 1979, the property had already been annexed to the City of Louisville. The trial court's ruling was predicated on a questionable assumption.

The initiative petitions were filed with the city clerk on March 21, 1979, before ordinance 637 had yet become effective. The Louisville Municipal Code, § 1.16.050, expressly provides that emergency measures take effect in five days. In fact, when the complaint was filed in this case, ordinance 637 had not yet been published as required by the Louisville

---

[5] Section 31-12-117, C.R.S. 1973 (1977 Repl. Vol. 12), provides that after the effective date of an annexation ordinance, all acts taken in conformity with the charter and ordinances of the annexing municipality remain effective, including subdivision platting and construction and occupancy of improvements. *See City Council v. Board of Directors of South Suburban Metropolitan Recreation and Park District,* 181 Colo. 334, 509 P.2d 317 (1973); *City and County of Denver v. Board of Directors of Bancroft Fire Protection District,* 38 Colo. App. 53, 554 P.2d 714 (1976). The intervening property owners acknowledged during the trial that any steps taken by them in connection with the development of the land in question would be at their peril, pending final resolution of this matter. The issue of whether, under the circumstances of this case, the property owners might acquire any vested rights pursuant to section 31-12-117 is precisely the type of question which should await the outcome of the election on the initiated measure, when litigants, whose rights are actually affected, are before the court.

Municipal Code.[6] Although we need not and do not decide the issue at this time, it is strongly arguable that the initiative petitions were more in the nature of a repeal of a not-yet-effective ordinance than a disconnection of already annexed property, and thus within the legislative powers of the city council. *See Board of County Commissioners v. City and County of Denver,* 190 Colo. 300, 546 P.2d 497 (1976); *Board of County Commissioners v. City and County of Denver,* 40 Colo. App. 281, 573 P.2d 568 (1978). The Municipoal Annexation Act, section 31-12-101 *et seq.,* C.R.S. 1973 (1977 Repl. Vol. 12), is silent on the power of a municipality to repeal an annexation ordinance. *See Board of County Commissioners v. City and County of Denver, supra.*

In terms of subject matter, the initiated measure in this case relates exclusively to a matter of local interest and concern — the 1,407 acres of property annexed to the city of Louisville. There is no statewide interest in this particular land. Admittedly, the state does have a general interest in matters of annexation and disconnection. That interest, however, centers essentially on procedural uniformity as it relates to the orderly growth of urban communities. Section 31-12-102, C.R.S. 1973 (1977 Repl. Vol. 12). The initiated measure here does not facially contravene or usurp any interest of the state. The uniquely local subject matter of the initiated measure, its clearly legislative character, *e.g., City of Louisville v. District Court,* 190 Colo. 33, 543 P.2d 67 (1975), and the timely filing of the initiative petitions prior to the effective date of annexation ordinance 637, place the electors' claim to an initiative election within the broad powers reserved to the people by Article V, Section 1, of the Colorado Constitution. *See, e.g., Billings v. Buchanan, supra; Colorado Project-Common Cause v. Anderson, supra; Burks v. City of Lafayette, supra; City of Rocky Ford v. Brown, supra; Yenter v. Baker, supra; Baker v. Bosworth, supra; Van Kleeck v. Ramer, supra; Speer v. People, supra; see also Associated Home Builders of the Greater Eastbay, Inc. v. City of Livermore,* 18 Cal. 3d 582, 557 P.2d 473, 135 Cal. Rptr. 41 (1976). The validity of the initiated measure, if approved by the electorate, can await determination at another time when actual litigants, whose rights are affected, are before the court. *Van Kleeck v. Ramer, supra; Speer v. People, supra.*

---

[6] Louisville Municipal Code, § 1.16.050, provides in pertinent part:
"All ordinances of a general or permanent nature . . . shall be published in some newspaper published within the city limits. Such ordinances shall not take effect and be in force until the expiration of thirty days after they have been so published, except for ordinances . . . necessary to the immediate preservation of the public health or safety and containing the reasons making the same necessary in a separate section. The excepted ordinances shall take effect in five days, provided they have been passed by an affirmative vote of three-fourths of the members of the council."
Ordinance 637 was published in the Louisville Times under a publication date of March 22, 1979.

## V.

 Our holding in this case is a narrow one. Where, as here, qualified voters of a municipality file protest referendum petitions before and immediately after the adoption of an annexation ordinance by a municipality, and municipal officials reject the referendum petitions on the basis of an emergency or safety clause incorporated in the ordinance, and immediately after the adoption of the ordinance and before it becomes effective under the municipal code, the qualified voters file initiative petitions for the repeal of the annexation ordinance, those qualified voters have a constitutional right to have that initiated measure submitted to the electorate in accordance with Article V, Section 1, of the Colorado Constitution, and section 1-40-116, C.R.S. 1973, and municipal officials in such a case must take all necessary and proper measures to implement the submission of that measure to the electorate.

The judgment is accordingly reversed and the cause is remanded to the district court with directions to order an election on the initiated measure.

JUSTICE LEE and JUSTICE LOHR dissent.

JUSTICE DUBOFSKY does not participate.

JUSTICE LOHR dissenting:

The majority mandates an election on a measure initiated by certain voters of the City of Louisville to repeal an ordinance annexing lands to the city. I respectfully dissent.

The powers of initiative and referendum which have been reserved to the legal voters of every city, town, and municipality by *Colo. Const.* art. V, Sec. 1, are not unlimited powers, but rather are powers limited by qualifying language:

"The initiative and referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality *as to all local, special and municipal* legislation of every character in or for their respective municipalities." (Emphasis added.)

Generally, the exercise of the power of initiative cannot be prevented by establishing that the proposed initiated law would be unconstitutional or otherwise invalid if it were adopted. *City of Rocky Ford v. Brown,* 133 Colo. 262, 293 P.2d 974 (1956); *see Speer v. People,* 52 Colo. 325, 122 P. 768 (1912).

However, there is a logically necessary exception to the foregoing rule. Simply stated, where the attempted exercise of the power of initiative or referendum exceeds the scope of the power reserved to the people, there can be no exercise of that power. This principle was recognized by this court in *City of Aurora v. Zwerdlinger,* 194 Colo. 192, 571 P.2d 1074

(1977). There, this court permitted a challenge to a proposed referred measure in advance of passage where the challenge was based on a contention that the character of the proposed legislation was not within the constitutionally reserved referendum power. In that case, a judgment was upheld which declared that a proposed referred law was not within the referendum power reserved to city voters by *Colo. Const.* art. II, Sec. 1, because the law treated matters administrative and not legislative in character.

The reserved power of initiative is limited to "all local, special and municipal legislation of every character." *Colo. Const.* art. V, Sec. 1. Annexation is not a subject of local, special and municipal character; rather it is a matter of statewide concern within the control of the General Assembly. *Ft. Col. Wtr. Dist. v. Ft. Collins,* 174 Colo. 79, 482 P.2d 986 (1971); *Rogers v. Denver,* 161 Colo. 72, 419 P.2d 648 (1966). *See* sections 31-12-101 to 122, C.R.S. 1973 (now in 1977 Repl. Vol. 12). Disconnection, or de-annexation, is likewise a matter of statewide concern. *See Rogers v. Denver, supra;* sections 31-12-501 to 503 31-12-601 to 605, and 31-12-701 to 707, C.R.S. 1973 (now in 1977 Repl. Vol. 12).

In *Ft. Col. Wtr. Dist. v. Ft. Collins, supra,* this court stated:
"The first fundamental precept in answer to the plaintiffs' contentions is that, in the absence of express constitutional provisions to the contrary, the general assembly has unlimited power over annexation of territory by municipalities; and even the legislative denial of the rights to notice and to vote upon annexation is not a denial of due process of law or the equal protection of the laws. . . ."
In *Rogers v. Denver, supra,* this court adopted the general rule that in the absence of express constitutional provisions to the contrary the power of a state legislature over the boundaries of municipalities of the state is plenary. *See also Mayor v. Shattuck,* 19 Colo. 104, 34 P. 947 (1893).

Fundamental to the foregoing principles is the basic concept that municipalities exist for the convenient administration of government and are merely instrumentalities created to carry out the will of the state. In *Commissioners v. Denver,* 150 Colo. 198, 372 P.2d 152 (1962), this court quoted from *Hunter v. Pittsburgh,* 207 U.S. 161, 28 S. Ct. 40, 52 L.Ed. 151, (1907), where it was said:
"'The state, therefore, at its pleasure may . . . expand or contract the territorial area (there of a city), unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. . . . The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive

exercise of it.'"

The General Assembly, in accordance with its plenary power over municipalities, enacted comprehensive legislation providing for the creation and organization of municipal corporations, annexation to municipalities, consolidation of municipalities, disconnection from municipalities, and discontinuance of municipal corporations. *See generally* articles 2, 3 and 12 of title 31, C.R.S. 1973. The statutes relating to annexation and disconnection provide the framework and control the method by which these objectives may be accomplished. They substantively delineate who may challenge the procedural compliance with the statutory mandates. *Ft. Col. Wtr. Dist v. Ft. Collins, supra.* Since these statutes are binding on municipalities generally, including home rule cities and towns (*Colo. Const.* art. XX), the municipal legislative bodies are bound to follow the statutory mandates. It follows that the legal voters of the municipalities are without power to initiate an ordinance that is beyond the power of the municipal legislative body to enact. In my view, it cannot be reasonably contended that annexation to or disconnection from a municipality is a subject of "local, special and municipal character" concerning which the limited powers of initiative and referendum may be exercised by the voters of a city. Therefore, the power of initiative in the voters of the City of Louisville does not extend to annexations and disconnections.

The majority does not reach the question whether the power of referendum is available with respect to the annexation ordinance which the plaintiffs seek to repeal. By parity of reasoning, the above discussion demonstrates that it is not.

There is a second reason that referendum is unavailable. Excepted from the power of referendum in our constitution are "laws necessary for the immediate preservation of the public peace, health or safety." The annexation ordinance which the plaintiffs seek to undo contains a legislative declaration that it is necessary for those very purposes. This legislative determination is conclusive upon this court and is not subject to judicial review. *E.g., Lyman v. Town of Bow Mar,* 188 Colo. 216, 533 P.2d 1129 (1975); *Shields v. City of Loveland,* 74 Colo. 27, 218 P. 913 (1923). We have recognized previously that an emergency clause may appropriately be included in an annexation ordinance. *See Board of County Commissioners v. City and County of Denver,* 193 Colo. 211, 565 P.2d 212 (1977).

The constitution itself reflects that the powers of initiative and referendum do not extend to the proposed legislative action involved in the instant case. We should be not less scrupulous in enforcing express limits on constitutionally protected rights than in permitting full and free exercise of those rights within such limits.

I would affirm the judgment of the trial court.

I am authorized to say that JUSTICE LEE concurs in this dissent.